73119. HODGES et al. v. EFFINGHAM COUNTY HOSPITAL AUTHORITY.
(355 SE2d 104)

McMURRAY, Presiding Judge.

In the early morning hours of September 11, 1981, Estelle B. Edwards was treated at the emergency room of the Effingham County Hospital. At that time there was no physician on duty in the emergency room, though a physician, Dr. Tan, was on call. Dr. Tan directed the treatment by telephone after receiving information from the nurses on duty in the emergency room. Mrs. Edwards was discharged from the emergency room and later that morning was taken to the office of Dr. Webb. At Dr. Webb's office, Mrs. Edwards went into cardiac arrest and subsequently died from complications arising out of a myocardial infarction. At trial there was evidence that Mrs. Edwards had an 85% to 90% chance of surviving the myocardial infarction after having arrived at the hospital if she had been treated for her ailment. The plaintiffs in this action against the defendant Effingham County Hospital Authority are the executor and children of Mrs. Edwards. The complaint as amended, alleges negligence by the hospital nurses, including their failure to obtain an accurate medical history of Mrs. Edwards and to fully report all known and observable symptoms plus the content of such history to the physician on call. The case was tried before a jury which returned a verdict in favor of defendant. Plaintiffs appeal. *Held*:

1. The "locality rule" states that a hospital owes to its patients only the duty of exercising ordinary care to furnish equipment and facilities reasonably suited to the uses intended and such as are in general use in hospitals in the area. See *Emory Univ. v. Porter*, 103 Ga. App. 752, 755 (120 SE2d 668). See also *Smith v. Hosp. Auth. of Terrell County*, 161 Ga. App. 657 (288 SE2d 715).

By motion in limine, plaintiffs sought to preclude any reference which might inform the jury of the "locality rule" in relation to the appropriate standard of nursing care. The trial court denied plaintiff's motion holding that the "locality rule" governs the case sub judice and subsequently charged the jury as to the "locality rule" standard of care and gave no charge as to the general standard of nursing care.

Plaintiffs enumerate as error the application of the "locality rule" rather than the general standard of nursing care. The crux of the plaintiffs' case is their evidence that the nurses employed by defendant failed to record and relay to the physician information concerning the decedent's complaints of stomach pain, that decedent had a heart condition, and that decedent had taken a nitroglycerin pill shortly before her arrival at the hospital. Plaintiffs' evidence also shows a failure to adhere to the general standard of nursing care in that no vital signs of Mrs. Edwards were taken after the administration of drugs. Also, no history of medication taken by Mrs. Edwards was obtained, although she regularly took several drugs.

As the plaintiffs are questioning the professional judgment of defendant's nurses, rather than the adequacy of services or facilities, the "locality rule" does not provide the appropriate standard of nursing care in the case sub judice. *Wade v. John D. Archbold Mem. Hosp.*, 252 Ga. 118 (311 SE2d 836); *Macon-Bibb County Hosp. Auth. v. Ross*, 176 Ga. App. 221, 223 (1) (335 SE2d 633). Therefore, the trial court erred in refusing to exclude evidence which would apply the "locality rule" standard of care to the alleged negligence of the nurses, in charging on the "locality rule" (in regard to nursing care) and in not charging on the general standard of nursing care.

2. Plaintiffs enumerate as error the trial court's directing a verdict against them as to punitive damages sought by the plaintiff-executor. See *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 340 (7) (319 SE2d 470). Plaintiffs argue that OCGA § 31-7-75 (1) (granting hospital authorities the power to "sue and be sued") authorizes the award of punitive damages against defendant and that the evidence authorizes punitive damages. Defendant argues that punitive damages may not be awarded against a hospital authority and that there was no evidence in the case sub judice authorizing punitive damages.

Plaintiffs cite *Medical Center Hosp. Auth. v. Andrews*, 162 Ga. App. 687 (292 SE2d 197), aff'd 250 Ga. 424 (297 SE2d 28) (construing former Code Ann. § 88-1805 (a), now OCGA § 31-7-75 (1)), in support of their contention that hospital authorities are subject to suit the same as any private corporation, while defendant would distinguish this case on the facts as it did not present any issue as to punitive damages. Although it is correct that the punitive damages issue was not reached in *Medical Center Hosp. Auth. v. Andrews*, 162 Ga. App. 687, supra, and 250 Ga. 424, supra, or in its precursor, *Knowles v.*

*Housing Auth. of Columbus,* 212 Ga. 729 (95 SE2d 659), it is apparent that the holding in these cases rests upon an interpretation of the statutory "sue and be sued" clause as imposing the same tort liability upon the respective public body corporate and politic as is imposed upon a private corporation. Thus, we conclude that under appropriate circumstances a hospital authority may be held liable for punitive damages.

"It is not essential to a recovery for punitive damages that the person inflicting the damage was guilty of wilful and intentional misconduct. It is sufficient that the act be done under such circumstances as evinces an entire want of care and a conscious indifference to consequences." *Battle v. Kilcrease,* 54 Ga. App. 808, 809 (4) (189 SE 573). See also *Mr. Transmission v. Thompson,* 173 Ga. App. 773, 775 (2) (328 SE2d 397), and *Dempsey Bros. Dairies v. Blalock,* 173 Ga. App. 7 (1) (325 SE2d 410). In the case sub judice, plaintiff presented evidence that the nurses employed by defendant were informed that Mrs. Edwards had a heart condition and had taken a nitroglycerin pill. The nurses failed to convey this information to Dr. Tan or to obtain information as to other medication being regularly taken, including Quinidine, a drug which regulates the heartbeat. Plaintiffs also show that obtaining and conveying such information was the responsibility of the nurses and that the physician, Dr. Tan, relied on the nurses to carry out this duty. A jury could reasonably conclude from the evidence presented that the failure of the nurses to convey actual knowledge of Mrs. Edwards' heart condition and medication evinces that entire want of care which would raise the presumption of a conscious indifference to the consequences. As there was evidence which would support an award by the jury of punitive damages, the trial court erred in granting defendant's motion for directed verdict as to punitive damages.

3. Plaintiffs contend the trial court erred in refusing to allow testimony of witnesses as to statements made to them by the deceased about her physical condition immediately prior to her death. Defendant objected to such statements on the ground that they were hearsay. Plaintiffs argue that the testimony should have been admitted "on the following proposition announced in *Lathem v. Hartford Accident &c. Co.,* 60 Ga. App. 523 (2) (3 SE2d 916): 'When death has sealed the mouth of a witness, and there is no other witness as to such deceased witness's injury and its cause, it being contended that the injury was the cause of his death, "the declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnish evidence of a present-existing pain or malady, to prove his condition, ills, pains and symptoms, whether arising from sickness or from an injury by accident or violence." ' " *City of Atlanta v. Crouch,* 91 Ga. App. 38,

39-40 (84 SE2d 475). *City of Atlanta v. Crouch*, supra, is an application of the rule of necessity, an exception to the hearsay rule admitting testimony as to the statements of deceased persons, regarding their injury and its cause, where there is no other evidence available. However, the subsequent cases of *Moore v. Atlanta Transit System*, 105 Ga. App. 70, 73 (2) (123 SE2d 693) and *Chrysler Motors Corp. v. Davis*, 226 Ga. 221 (173 SE2d 691) have added the requirement that not only must the decedent's declarations be admitted of necessity, but there must also be a circumstantial guaranty of the trustworthiness of the offered evidence. In the case sub judice the decedent's statement was self-serving and the witness testifying to the statements stood to gain substantially from their admission, therefore we cannot say that the test of trustworthiness is satisfied. *Irby v. Brooks*, 246 Ga. 794 (273 SE2d 183).

4. Plaintiffs enumerate as error the trial court striking (removing from consideration by the jury) portions of the death certificate of the deceased prior to allowing its introduction into evidence. The death certificate showed the immediate cause of death as shock and respiratory failure due to or as a consequence of ventricular fibrillation and cardiac arrest. The certificate shows the interval between the onset of these causes and death as 30 to 60 minutes. Plaintiffs contend the trial court erred in deleting (removing from consideration by the jury) a further cause of death, a myocardial infarction showing an interval between onset and death of several hours and a further significant condition contributing to death as angina pains 48 to 72 hours prior to the myocardial infarction. "[A] death certificate serves as prima facie evidence only of (1) the death itself and (2) the immediate agency of the death. Other conclusions, such as those regarding the events leading up to the death or whether the cause of death was intentional or accidental, are not admissible." *King v. State*, 151 Ga. App. 762, 763 (261 SE2d 485). See also *Security Life Ins. Co. v. Blitch*, 155 Ga. App. 167, 168 (2) (270 SE2d 349). In the case sub judice, the testimony of Dr. Webb, the certifying physician on the death certificate, describes the myocardial infarction as a diagnosis of an event he believes to have occurred several hours prior to Mrs. Edwards' coming to his office. In Dr. Webb's opinion it took several hours for the myocardial infarction to result in death. The other deleted item was Dr. Webb's notation of angina pain as a contributing cause of death also occurred several hours prior to death and that diagnosis was "obtained from a combination of histories." Thus, the evidence shows that the matter deleted (removed from jury consideration) from the death certificate did not involve the immediate agency of death and the trial court did not err in deleting (removing from consideration by the jury) these items from the death certificate. *Security Life Ins. Co. v. Blitch*, 155 Ga. App. 167, 168 (2), supra; *King v.*

*State*, 151 Ga. App. 762, 763, supra. See also *State Mut. Ins. Co. v. Sullens*, 147 Ga. App. 59, 60 (2) (248 SE2d 18).

5. Plaintiffs enumerate as error three charges given the jury which plaintiffs contend are appropriate only in relation to physicians and surgeons, but should not have been applied to the nursing profession. The first of these charges sets forth the presumption that medical care was performed in an ordinarily skillful manner and places the burden on the one receiving the services to show a want of due care, skill and diligence. See *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 638 (244 SE2d 739); *Blount v. Moore*, 159 Ga. App. 80, 81 (282 SE2d 720); *Hayes v. Brown*, 108 Ga. App. 360, 363 (1) (133 SE2d 102); *Shea v. Phillips*, 213 Ga. 269, 271 (2) (98 SE2d 552). In *McKinney v. Schaefer*, 117 Ga. App. 595, 597 (2) (161 SE2d 446), an action against a partnership of physicians and their employee nurse, wherein the direct negligence of the physicians was not involved, we held that the above-stated principle was correct, "whether the negligence charged to physicians is the negligence of the physicians directly or under the rule of respondeat superior." Thus, we have previously applied this principle to the nursing profession and the trial court did not err in also doing so.

The second charge at issue states: "I further charge you that a hospital does not guarantee the results of its care and proof alone that the outcome of the care is different from that expected or is followed by disastrous instead of beneficial results neither establishes nor supports an inference of want of proper care, skill or diligence on the part of the hospital nurses." A substantially similar charge was held applicable to hospitals in *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 639, supra. The trial court did not err in giving the above-quoted charge.

The remaining charge at issue states: "I further charge you that a mere difference in views between medical experts or as to medical care exercised is insufficient to support an action for malpractice where it is shown that the case preferred by each is an acceptable and customary method of providing care." This charge does not involve a principle peculiar to physicians or even to the medical area, but a general concept of tort law. There is no error in applying this principle to the nursing profession. See 65 CJS, Negligence, § 16; *Stefan Jewelers v. Berry*, 163 Ga. App. 626 (1) (295 SE2d 373).

6. Plaintiffs enumerate as error the trial court's failure to give three requested jury instructions. The first of these instructions involves responsibility for the action of a nurse while performing acts which constitute a part of the patient's treatment as prescribed by the attending physician. As there is no issue presented by the evidence involving negligence in the administration of a prescribed treatment this instruction is not adjusted to the evidence and we find no

error in the trial court's refusal to so instruct the jury. *Browning v. Kahle*, 106 Ga. App. 353, 356 (126 SE2d 892).

The second requested charge states: "Control remains with the hospital when its nurse employees perform non-medical acts. Where no unusual features are involved which call for an exercise of medical skill or experience, a doctor may reasonably take for granted that the experienced nurse on the staff of a modern hospital will attend to their ordinary and customary duties without detailed instruction." The third requested instruction at issue states: "A doctor has no responsibility to instruct or warn nurses with respect to performance of matters within the ordinary and customary duties of the nursing profession." Defendant contends that these requests are not adjusted to the evidence and that the jury was adequately instructed on the hospital's responsibilities for its nurse-employees. We cannot agree. In view of the evidence and arguments suggesting that Dr. Tan was responsible for any failure in care that caused the death of Mrs. Edwards, the nature and boundaries of the duties of nurse and physician, as well as when the nurses were under control of the hospital or physician were crucial to the jury's decision. We cannot find the substantial equivalent of these requested instructions in the trial court's charge to the jury. The requested instructions are accurate statements of the law and adjusted to the evidence, therefore, the trial court erred in failing to give plaintiffs requested instructions (Nos. 23 and 24). *Porter v. Patterson*, 107 Ga. App. 64 (1, 3) (129 SE2d 70); *Su v. Perkins*, 133 Ga. App. 474, 479 (2) (211 SE2d 421). See also *S. S. Kresge Co. v. Carty*, 120 Ga. App. 170 (1a) (169 SE2d 735); *Williams v. Harris*, 105 Ga. App. 252 (4) (124 SE2d 429).

7. Plaintiffs contend the trial court erred in directing a verdict on the issue of interest from the date of death to the date of rendition of the verdict. As there is no evidence of compliance with the "Unliquidated Damages Interest Act" (OCGA § 51-12-14) (1982) we find no error. *Standard Oil Co. v. Reagan*, 15 Ga. App. 571 (84 SE 69) (1915), must yield to the provisions of OCGA § 51-12-14. *Barbush v. Oiler*, 158 Ga. App. 625 (281 SE2d 359).

*Judgment reversed. Carley and Pope, JJ., concur.*

DECIDED MARCH 17, 1987.

*C. James McCallar, Jr., H. Joseph Chandler, Jr.*, for appellants.
*Charles H. Brown, Susan W. Cox, Alex L. Zipperer III*, for appellee.