## A90A0427. MENENDEZ v. JEWETT.
(396 SE2d 294)

BEASLEY, Judge.
Karen Menendez was the driver of an automobile which failed to negotiate a curve and struck a telephone pole. Her passenger, Bradley Jewett, was injured and sued her.

Menendez met Jewett, an acquaintance, at a lounge one evening. They socialized with mutual friends and acquaintances for several hours, until the bar closed. Jewett's friends urged that he not attempt to drive home because he appeared to be under the influence of alcohol and suggested that appellant drive him home. A jury, by special interrogatory, found that Jewett was 40 percent contributorily negligent and awarded him $267,916. On a motion for additur, the court increased the award by the 40 percent deduction and entered judg-

ment accordingly.

1. The first question is whether the court erred in refusing to give defendant's charge on assumption of the risk.

If the evidence entitled defendant to such a charge, no harm resulted from its omission. The reason is that the jury found that the proximate cause of the wreck and consequently of plaintiff's injuries were the combined negligence of defendant driver (60 percent of the cause) and of plaintiff passenger (40 percent of the cause).

Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause. *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 668 (88 SE2d 6) (1955); *Doctors Hosp. of Augusta v. Poole*, 144 Ga. App. 184, 185 (2) (241 SE2d 2) (1977); *Johnson v. Jackson*, 140 Ga. App. 252, 258 (5) (a) (230 SE2d 756) (1976). The jury's finding as fact not only that *a* proximate cause, but the *predominant* proximate cause, was defendant's negligence precluded application of assumption of the risk because it would have required an inconsistent finding. Comparative or contributory negligence and assumption of the risk are mutually exclusive, although relative, theories. See *Osburn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980). In the former, both constitute "legal cause," whereas in the latter, the plaintiff's is the legal cause. See *Laseter v. Clark*, 54 Ga. App. 669, 670 (1) (189 SE 265) (1936).

2. Menendez claims, justifiably, that the court erred in excluding evidence of Jewett's blood alcohol test.

One of the issues was his perception in choosing to ride with defendant Menendez. Was he an innocent victim or not? The fact that his blood alcohol content was .14 soon after he made that choice would tend to show that his understanding, appreciation, and judgment concerning Menendez' condition and the wisdom of riding with her was voluntarily impaired. It would also tend to cast doubt on, if not impeach, his testimony that in his view at the time, she was "fine" and capable of driving safely.

"It has long been the rule in this State that where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury. [Cits.]" *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784) (1956). " 'The admission of evidence is a matter which rests largely within the sound discretion of the trial judge.' [Cit.] However, 'The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value,' Agnor's Georgia Evidence, § 10-2, p. 165; . . . and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. [Cit.]" *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360) (1980).

The evidence that plaintiff's blood alcohol content was .14, the

same as defendant's, rendered him presumptively under the influence of alcohol such that he was prohibited from driving. OCGA §§ 40-6-392; 40-6-391. That his condition negatively affected his perception made less probable the validity of his trial testimony about it. In addition, it skewed and shadowed his judgment in choosing to ride with Menendez.

Nevertheless, the verdict and judgment would not be reversible on this ground because this circumstantial evidence of his condition was cumulative of the undisputed evidence from himself and others that he was too drunk to drive, having had by his own testimony six or seven beers between 11:00 p.m. and about 2:30 a.m., so much so that his companions took away his motorcycle keys and helmet, without his objection. *Thomas v. Statewide Beverage Equip.*, 152 Ga. App. 293, 295 (4) (262 SE2d 575) (1979).

3. No reversible error occurred in excluding evidence of Jewett's non-usage of a seat belt. *City of Fairburn v. Cook*, 188 Ga. App. 58, 67 (372 SE2d 245) (1988), decided before passage of Georgia's seat belt law, OCGA § 40-8-76.1, held that lack of probative evidence demonstrating that an automobile accident victim would not have been injured had he been wearing his seat belt precluded jury consideration of that issue. See also *Katz v. White*, 190 Ga. App. 458 (379 SE2d 186) (1989), another case decided prior to the effective date of OCGA § 40-8-76.1.

Jewett's attending physician testified that he was a board-certified emergency physician, but he had no formal training as to the relationship of the use of seat belts to injuries. He was familiar with articles in medical journals stating there was a relationship, and his experience as an emergency room physician led him to believe that seat belts helped prevent serious injuries in automobile accidents. The trial court, however, did not find him to be an expert witness and declined to admit evidence that Jewett was not wearing his seat belt. Qualification as an expert rests entirely within the sound discretion of the trial judge. *Braggs v. State*, 189 Ga. App. 275, 276 (375 SE2d 464) (1988).

4. Jewett's divorce decree was properly excluded from evidence. He did not claim that the injuries he sustained in the accident caused his divorce or that he was entitled to damages because of divorce. His former wife made no claim for loss of consortium.

5. Finally, granting the additur was erroneous.

The jury found that plaintiff himself was negligent and that his negligence contributed to the proximate cause of the wreck and his becoming injured. It compared his negligence with defendant's and found that his accounted for forty percent. The jury's request for further instructions on computing percentages, after it had been deliberating about an hour and a half, confirms that it early on found both

parties to be negligent under the circumstances. After being rein-structed, it reached the verdict in less than ten minutes.

The court must not interfere with the jury's verdict, a unanimous decision by twelve impartial people, unless it is "so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12. The court concluded that the verdict was inadequate as a matter of law because the jury found negligence on the part of plaintiff which contributed proximately to the damages, whereas there was no evidence of such. The court came to this conclusion by comparing the similarities in *Bentley v. Buice*, 102 Ga. App. 101 (115 SE2d 706) (1960). However, while there are some common factors, the circumstances in Jewett's case differ materially, and there is some evidence on two scores to support the verdict. One concerns plaintiff's choosing to ride with defendant in the first place, and the other involves plaintiff's interference with defendant's driving.

" 'If a driver, from intoxication, is in a condition which renders him incapable of operating (the vehicle) with proper diligence and skill, and this is known or palpably apparent to one entering the car, this is a fact that may be proved for the consideration of the jury [in determining fault].' " *Trussell v. Lawrence*, 120 Ga. App. 39, 43 (1) (169 SE2d 611) (1969). Illustrative is *Bell v. Proctor*, 212 Ga. 325 (1) (92 SE2d 514) (1956).

The trial court failed to take into account the reasonable inferences, and all of the evidence, which the jury was authorized to use. Considering the evidence in a light favorable to the verdict, Jewett knew when he chose to ride with Menendez what the effects of imbibing alcohol are on a person, having been rather extensively formally trained on the subject during his military service. He knew that she had had at least two beers at the bar they were leaving, because he had seen her with two "fresh" ones. He thought she had had about five. He knew she had been there for about 4-½ hours and that he had not been in her presence the entire time, so he was not certain how many drinks she had. They were leaving at the closing hour, about 2:30 a.m., when everyone was tired on top of alcohol consumption. He knew she had been at another bar before she came to this one. He had seen her drunk enough on an earlier occasion to affect her behavior. This time it caused one companion to conclude that both of them were too drunk to drive. Jewett had had six or seven beers, so he was not as keenly aware of her condition when he got into her car. His own intoxication, if it rendered him unable for that reason to exercise ordinary care, did not excuse him from the duty. *Powell v. Berry*, 145 Ga. 696, 700 (2) (89 SE 753) (1916).

Menendez later admitted that she was too drunk to drive, the officer charged her with driving under the influence, and her blood alcohol content was the same as Jewett's, .14. Even if she did not

manifest the usual outward signs, plaintiff's knowledge of their respective conditions could lead to the finding that he knew or, in the exercise of ordinary care should have known, he was going with a driver who had been drinking and who was, considering all the circumstances including the hour, a less safe driver than the law and common sense allows to operate an automobile. "No fact is better known or publicized than that alcohol slows the reflexes, dulls the thinking processes, slows the impulse stimuli and reaction thereto, and is rated by doctors, law enforcement officials, and safety engineers and planners as being one of the chief causes of highway accidents in this country." *Freeman v. Martin*, 116 Ga. App. 237, 242 (156 SE2d 511) (1967). See *Seitz v. McCullough*, 138 Ga. App. 147 (225 SE2d 917) (1976).

In addition, the court in granting the additur completely disregarded the evidence that Jewett was joking and bouncing around in the passenger seat, "fooling around," "jumpy," "very loud," "swinging around," just before the curve, distracting the driver. The jury was authorized to find that this, too, was negligent behavior on plaintiff's part, considering the circumstances, and that it contributed proximately to the driver's missing the curve.

"There is no better established rule of law than that negligence, and diligence, even gross negligence and slight diligence are questions of fact, to be determined by a jury, and not by the court. [Cit.]" *Kirkland v. Moore*, 128 Ga. App. 34 (195 SE2d 667) (1973).

The additur is reversed as an unauthorized invasion of the verdict, and the trial court is directed to reinstate the original judgment.

*Judgment reversed and case remanded with direction. Pope, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED JULY 12, 1990 —
REHEARINGS DENIED JULY 30, 1990 — CERT. APPLIED FOR.

*Barrow, Sims, Morrow & Lee, R. Stephen Sims, Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock*, for appellant.

*Randall G. Levine, Charles R. Ashman, Jeffrey W. Lasky, David S. Bills, Don C. Keenan*, for appellee.