A97A0658. BROWN v. STARMED STAFFING, L.P.
A97A0659. DeKALB MEDICAL CENTER, INC. v. BROWN.
A97A0660. SIMMONS v. BROWN.
A97A0661. ATLURI v. BROWN.
(490 SE2d 503)

McMURRAY, Presiding Judge.

These four appeals arose from the same medical malpractice action. About 8:30 p.m. on October 20, 1992, James R. Brown was admitted to the emergency room at DeKalb Medical Center, Inc. ("the hospital"). His tongue was swollen, and he had difficulty swallowing. Emergency room personnel medicated Mr. Brown and called his reg-

ular physician, Alan O. Feingold. The physician handling Dr. Feingold's after-hour calls, Revati Atluri, arrived at the emergency room two and one-half to three hours later and determined that Mr. Brown had more than likely experienced an allergic reaction to his blood pressure medication. Dr. Atluri ordered intensive care and directed Mr. Brown's "wife[, Willie W. Brown,] to [go home and] call [the nurses' station] with his blood pressure medicines, names, and doses. . . ." Dr. Atluri then entered the term, "NPO," on Mr. Brown's hospital chart. To medical professionals, this notation means to give the patient nothing by mouth.

Mrs. Brown went home, retrieved all of her husband's medicine, returned to the hospital and gave the medication to a nurse at the nurses' station. Mrs. Brown then returned to the emergency room waiting area. A few hours later, at about 4:00 a.m., Emergency Room Nurse Michael Simmons gave Mr. Brown the blood pressure medicine that Dr. Atluri thought may have caused Mr. Brown's allergic reaction. According to Nurse Simmons, Dr. Atluri verbally directed him to give Mr. Brown his regular doses of blood pressure medicine.[1]

Later that day (about 12:00 p.m. on October 21, 1992), Dr. Feingold arrived at the hospital and examined Mr. Brown. Dr. Feingold informed the Browns that Mr. Brown's allergic reaction was probably caused by a blood pressure medication Mr. Brown was taking, "Zestril." Mrs. Brown informed Dr. Feingold that the hospital had given Mr. Brown "Zestril" earlier that morning and asked if this dose would harm her husband. Dr. Feingold told Mrs. Brown, "he'll be all right, see me in the morning." Dr. Feingold then took Mr. Brown's "Zestril," scheduled him for an office visit the next morning and discharged Mr. Brown from the hospital. Mr. Brown never made it to Dr. Feingold's office the next morning.

Mr. Brown experienced another allergic reaction at 5:00 in the morning on October 22, 1992. Mrs. Brown woke up when she heard her husband gagging for breath. Unable to revive Mr. Brown, Mrs. Brown called for emergency medical assistance. But it was too late. Mr. Brown had choked to death on his grossly swollen tongue.

Willie W. Brown, individually and as administratrix of her husband's estate, brought a medical malpractice action against Alan O. Feingold, M.D., Alan O. Feingold, M.D., P.C., Revati Atluri, M.D., DeKalb Medical Center, Inc., Michael Simmons, R.N. and StarMed Staffing, L.P. ("StarMed"), the medical personnel staffing service that

---

[1] Although Dr. Atluri denies that she gave any such verbal order, she admitted during her deposition that — sometime after she treated Mr. Brown — she initialed a section in Mr. Brown's hospital chart indicating that the patient had been given his regular doses of blood pressure medication at 4:10 a.m. on October 21, 1992.

contracted with the hospital for Nurse Simmons to work in the hospital's emergency room. Mrs. Brown pertinently alleged the reckless administration of "Zestril" to Mr. Brown, while Dr. Atluri and Nurse Simmons were aware that "Zestril" may have caused Mr. Brown's allergic reaction, was a proximate cause of her husband's death. Mrs. Brown alleged Dr. Feingold was negligent in failing to immediately treat Mr. Brown for an allergic reaction after learning that his patient had recently ingested (at the hospital) the suspected allergen, "Zestril." Mrs. Brown asserted that the hospital and StarMed are responsible for Nurse Simmons' alleged negligence based on the doctrine of respondeat superior.

The trial court granted StarMed's motion for summary judgment based on a finding that the doctrine of respondeat superior does not cover StarMed because Nurse Simmons was the hospital's "borrowed servant" at the time of the nurse's alleged negligence. The trial court denied the hospital's motion for summary judgment and also denied Nurse Simmons' and Dr. Atluri's motions for partial summary judgment as to punitive damages. Mrs. Brown filed a direct appeal in Case No. A97A0658. The hospital filed a cross-appeal in Case No. A97A0659. Nurse Simmons filed a cross-appeal in Case No. A97A0660. And Dr. Atluri filed a cross-appeal in Case No. A97A0661. *Held*:

### Case No. A97A0658

1. Mrs. Brown contends the trial court erred in granting StarMed's motion for summary judgment, arguing that the three-prong test for establishing that Nurse Simmons was a "borrowed servant" was not met. "The definitive test for determining whether an employee is a 'borrowed servant' was set forth in *U. S. Fidelity &c. Co. v. Forrester*, 230 Ga. 182, 183 (196 SE2d 133) (1973). The evidence must show that '(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant.' Id. In *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377-378 (1) (276 SE2d 572) (1981), the Supreme Court further refined this test by indicating that all three prongs of the test must focus on 'the occasion when the injury occurred' rather than the work relationship in general." *Stephens v. Oates*, 189 Ga. App. 6, 7 (1) (374 SE2d 821). We are compelled to apply this narrow standard in the case sub judice.

Although StarMed paid Nurse Simmons' wages, provided him with health insurance and workers' compensation coverage, and required Nurse Simmons to abide by its rules, the hospital's rules as well as all applicable professional standards, it is undisputed that

the hospital had complete supervisory control over Nurse Simmons while he was watching over Mr. Brown and that the contract between StarMed and the hospital provided the hospital with exclusive right to discharge Nurse Simmons if his "performance does not meet the standards established for all professionals in the Hospital's employ." StarMed's contract with the hospital provides only that the "[h]ospital will forward to [StarMed] documentation of [any such] termination." Mrs. Brown, nonetheless, argues that Nurse Simmons was not the hospital's "borrowed servant" when he gave Mr. Brown the allegedly fatal dose of "Zestril" because there is proof that Dr. Atluri — not the hospital — ordered Nurse Simmons to administer this medication. This assertion is without merit because the critical undisputed fact (with regard to StarMed's vicarious liability) is that StarMed did not control Nurse Simmons' conduct when he administered "Zestril" to Mr. Brown.

Under the law set forth by the Supreme Court of Georgia in *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1), supra, the undisputed circumstances in the case sub judice reveal that Nurse Simmons was the hospital's "borrowed servant" at the time of his alleged negligence. The trial court therefore did not err in granting StarMed's motion for summary judgment.

### Case No. A97A0659

2. Citing *Hoffman v. Wells*, 260 Ga. 588, 589 (397 SE2d 696), and *Parker v. Hosp. Auth. of the City of Bainbridge &c.*, 214 Ga. App. 113, 114 (2) (446 SE2d 766), the hospital contends the trial court erred in denying its motion for summary judgment based on the "borrowed servant" doctrine because Nurse Simmons was Dr. Atluri's "borrowed servant" at the time of the nurse's alleged negligence. These assertions are without merit because, unlike the circumstances in *Hoffman* and *Parker*, there is evidence in the case sub judice that Nurse Simmons was not acting under the direction and control of Dr. Atluri when he gave Mr. Brown the allegedly fatal dose of "Zestril." Apparently conceding this factual distinction, the hospital cites *Moore v. Carrington*, 155 Ga. App. 12 (1) (270 SE2d 222), alternatively urging that it cannot be liable for Nurse Simmons' alleged negligence because he exercised professional judgment in deciding — on his own — to give Mr. Brown blood pressure medication.

In *Moore v. Carrington*, 155 Ga. App. 12, supra, this Court held that a " 'hospital is liable for the negligence of its nurses, orderlies and other employees, in the performance of mere administrative or clerical duties which, though constituting a part of the patient's prescribed medical treatment do not require the application of specialized technique or the understanding of a skilled physician or surgeon

and which duties are not performed under the direct supervision of the attending physician.' *Porter v. Patterson*, 107 Ga. App. 64 (1) (a) (129 SE2d 70) (1962). See also *Su v. Perkins*, 133 Ga. App. 474 (211 SE2d 421) (1974); *Miller v. Atkins*, 142 Ga. App. 618 (236 SE2d 838) (1977)." Id. at 12-13 (1). There is no conclusive evidence in the case sub judice answering why Nurse Simmons gave Mr. Brown blood pressure medication at 4:10 a.m. on October 21, 1992. Indeed, the current state of facts in the case sub judice may authorize a jury's finding that Nurse Simmons exercised no judgment at all when he gave Mr. Brown his daily dose of blood pressure medication. To this extent, there was no clear prohibition in Mr. Brown's hospital chart not to give Mr. Brown his normal daily dose of blood pressure medicine. Dr. Atluri only noted the term, "NPO," on this document. While it is undisputed that medical professionals consider this notation to mean "nothing by mouth," there is proof (in Dr. Atluri's deposition) indicating that such a notation — without more specific reference — may be taken to refer only to food and drink, not medication. With this evidence, proof that Nurse Simmons administered Mr. Brown's blood pressure medicine from containers bearing a physician's order or prescription for daily doses of the medicine and evidence that Nurse Simmons carried out these orders during the early morning hours of his shift, we cannot say — as a matter of law — that Nurse Simmons was exercising professional judgment when he gave Mr. Brown the allegedly fatal dose of "Zestril." Summary judgment is appropriate only when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). Since genuine issues of material fact remain in the case sub judice as to why Nurse Simmons gave Mr. Brown his daily dose of blood pressure medication, the trial court did not err in denying the hospital's motion for summary judgment.

The hospital, citing *Vulcan Life &c. Ins. Co. v. United Banking Co.*, 118 Ga. App. 36, 37 (4) (162 SE2d 798), also argues that it cannot be liable under the doctrine of respondeat superior because Nurse Simmons was acting outside the scope of his authority when he gave Mr. Brown the regulated medication, "Zestril." The hospital specifically reasons that Nurse Simmons could not have been acting within the scope of his authority when he gave Mr. Brown "Zestril" because hospital policy, as well as OCGA § 43-26-3 (6), prohibited any nurse from administering the medication without a physician's order. We cannot accept such a position — as a matter of law — in the case sub judice because there is proof that Mr. Brown's blood pressure medication was administered by Nurse Simmons from containers indicating a physician's prescription or order for the medication. We therefore

cannot discount the possibility that a jury may determine that Nurse Simmons was acting within hospital policy, as well as OCGA § 43-26-3 (6), when he gave "Zestril" to Mr. Brown. See *Lau's Corp. v. Haskins*, 261 Ga. 491, supra.

3. Citing *Matthews v. DeKalb County Hosp. Auth.*, 211 Ga. App. 858 (440 SE2d 743), the hospital contends that regardless of any negligence on its part, Dr. Feingold's intervening negligence in prematurely discharging Mr. Brown from the hospital was an intervening act of negligence constituting the sole proximate cause of Mr. Brown's death.

In *Matthews*, "Mrs. Matthews came to the DeKalb General emergency room complaining of a pain in her chest. The triage nurse recorded her history, obtained her vital signs and made an assessment. Matthews indicated that she was not in pain, and the triage nurse classified her condition as non-life threatening and told her that it would be a long wait. After four and a half hours of waiting, a social services representative told Matthews that the doctor would see her next. Matthews stated that she had waited too long and was leaving. The social services representative pleaded with Matthews to stay, but she left nonetheless, and died two days later. This court affirmed the superior court's grant of DeKalb General's motion for summary judgment, finding that Matthews' voluntary termination of her relationship with the hospital severed any causal relationship with DeKalb General's actions." *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1), 109 (480 SE2d 40).

Unlike the circumstances in *Matthews*, there is evidence in the case sub judice of negligence by Nurse Simmons at the time Mr. Brown was under the hospital's care. "The proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently in causing the injury. [Cits.] While the causal connection between an act of negligence and a resulting injury is not broken by an intervening act which immediately causes the injury where this act can, in the exercise of due care, be foreseen by the original wrongdoer, the negligence in the intervening act may concur with the negligence of the original wrong-doer in causing the injury, and the perpetrators of both acts may be joint tortfeasors." *Allyn & Bacon Book Publishers v. Nicholson*, 58 Ga. App. 729 (1) (199 SE 771).

In the case sub judice, there is evidence that the hospital's emergency room staff — knowing that Mr. Brown had been administered "Zestril" a few hours earlier — summoned Dr. Atluri (and then Dr. Feingold) to the hospital to discharge Mr. Brown. Dr. Atluri testified that "they [the hospital personnel] could not find a bed in the ICU, and they wanted Dr. Atluri to come and evaluate him in the emergency room because he feels fine, evaluate for possible discharge." Under these circumstances, we cannot say — as a matter of law —

that Dr. Feingold's act of discharging Mr. Brown from the hospital's emergency room, with knowledge that Mr. Brown had ingested "Zestril" during his stay at the hospital, was an unforeseeable intervening cause of Mr. Brown's death. "As we have previously noted [under such circumstances], proximate cause is generally an issue for the jury, and there may be more than one proximate cause of an injury. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 158 (1) (B) (256 SE2d 916) (1979)." *Keith v. Beard*, 219 Ga. App. 190, 192 (2), 193 (464 SE2d 633). See *Medi-Clean Svcs. v. Hill*, 144 Ga. App. 389, 390 (1), 391 (241 SE2d 290).

The trial court did not err in denying the hospital's motion for summary judgment.

### Case Nos. A97A0660 and A97A0661

4. Dr. Atluri and Nurse Simmons contend punitive damages are not available for their alleged reckless administration of "Zestril" to Mr. Brown, arguing that punitive damages are authorized only when clear and convincing evidence shows that a defendant's conduct exhibits "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

"[R]ecovery of punitive damages may be authorized where the circumstances of the tort show an entire want of care and an indifference to consequences. Wilful and intentional misconduct is not essential. *Hodges v. Effingham County Hosp. Auth.*, 182 Ga. App. 173 (355 SE2d 104) (1987)." *Hoffman v. Wells*, 260 Ga. 588 (1), supra. In light of the grave factual dispute, in the case sub judice, as to whether Nurse Simmons, Dr. Atluri or both were responsible for Mr. Brown's fatal dose of "Zestril," we cannot discount the possibility that punitive damages may be authorized in the case sub judice. Accordingly, we cannot say the trial court erred in denying Nurse Simmons' and Dr. Atluri's motions for partial summary judgment.

*Judgments affirmed. Beasley, J., concurs. Smith, J., concurs in the judgment only.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 30, 1997 —

*Hart & McIntyre, George W. Hart, Bonnie M. Wharton, Thomas W. Thrash, Jr.*, for Brown.

*Long, Weinberg, Ansley & Wheeler, Robert G. Tanner, Stephen R. Chance*, for StarMed Staffing and Simmons.

*Sullivan, Hall, Booth & Smith, Henry D. Green, Jr.*, for DeKalb

Medical Center, Inc.

 *Gleaton, Scofield, Egan & Jones, Frederick N. Gleaton, Marla M. Eastwood*, for Atluri.