## A00A2205. LANGLOIS v. WOLFORD.
(539 SE2d 565)

ELDRIDGE, Judge.

On February 7, 1998, while under the influence of alcohol, Jeffery M. Langlois fled the scene of a collision where he sideswiped the vehicle which Shawn T. Wolford was driving, injuring him. At trial, the court permitted evidence that Langlois had been drinking immediately after the collision, was in an intoxicated state immediately after the collision at another location, and had a long history of drinking, DUI, and other moving traffic violations. Plaintiff had medical specials of $643, and the jury returned a general verdict of $3,500 plus $300,000 in punitive damages. Langlois contends that the trial court erred in not directing a verdict on the punitive damages and in allowing the admission of evidence of his prior drinking, prior traffic offenses, and evidence that he had consumed alcohol after the collision and was intoxicated. The evidence was relevant and material to the aggravating facts and circumstances on the issue of punitive damages and the amount of such damages as well as for

---

[6] *Wiley*, supra.
[7] 271 Ga. 55 (518 SE2d 411) (1999).
[8] Id.

liability and impeachment because Langlois contested that he was driving while intoxicated; there being evidence on the issue of punitive damages, the denial of the directed verdict was proper. We affirm.

1. Langlois asserts that the trial court erred in failing to grant his motion for directed verdict on the issue of punitive damages. We do not agree.

The tortfeasor must have engaged in some form of culpable conduct to support an award of punitive damages by clear and convincing evidence. OCGA § 51-12-5.1 (b); *Howard v. Alamo Corp.*, 216 Ga. App. 525 (455 SE2d 308) (1995); *Ralston v. Etowah Bank*, 207 Ga. App. 775, 777 (3) (429 SE2d 102) (1993). However, wilful and intentional conduct is not essential to recover punitive damages, because where the facts and circumstances of the tort show an entire want of care, such conduct gives rise to a presumption of indifference to the consequences, i.e., wantonness, which is sufficient to support an award of punitive damages. See *Brown v. StarMed Staffing*, 227 Ga. App. 749, 755 (4) (490 SE2d 503) (1997); see also *Hoffman v. Wells*, 260 Ga. 588 (1) (397 SE2d 696) (1990); *Hodges v. Effingham County Hosp. Auth.*, 182 Ga. App. 173, 175 (2) (355 SE2d 104) (1987). The peculiar facts and circumstances of a particular case, when supported by clear and convincing evidence of culpability, may cause ordinary negligence to give rise to the presumption that the conduct showed a conscious indifference to the consequences and an entire want of care. See *Durben v. American Materials*, 232 Ga. App. 750, 751 (1) (503 SE2d 618) (1998).

Leaving the scene of an accident was criminalized under OCGA §§ 40-6-270 (a) and (c) and 40-6-271, as hit and run, because the public policy of this state mandates that a party to an accident must stop and render aid to those involved in the collision, no matter who caused the collision, and not leave them in a possibly disabled state without aid. *Ga. Power Co. v. Shipp*, 195 Ga. 446 (24 SE2d 764) (1943); *Bellamy v. Edwards*, 181 Ga. App. 887, 889 (3) (354 SE2d 434) (1987); *Battle v. Kilcrease*, 54 Ga. App. 808, 809-810 (4) (189 SE 573) (1936). Thus, such act of leaving the scene of a collision without even speaking to the other party, as mandated by statute, was an intentional and culpable act; such conduct demonstrated a conscious indifference to the consequences and an entire want of care as to the victim's well-being, permitting the jury to find that such conduct was of an aggravated and indifferent nature for purposes of imposing punitive damages. *Bellamy v. Edwards*, supra at 889; *Battle v. Kilcrease*, supra at 809-810 (4). Thus, such conduct alone was sufficient to show aggravated circumstances so as to permit the jury to consider the imposition of punitive damages for such culpable conduct. Further, driving under the influence of alcohol constituted such wanton

conduct that it was both intentionally wilful and evinced such entire want of care as to be wanton, because it placed others at great risk of injury or death. See *Moore v. Thompson*, 255 Ga. 236, 237 (336 SE2d 749) (1985); *Holt v. Grinnell*, 212 Ga. App. 520 (441 SE2d 874) (1994).

The defendant left the scene of the collision without even speaking to the plaintiff, which gave rise to the reasonable inference that flight was from a sense of guilt. *Parker v. State*, 232 Ga. App. 609, 611 (1) (502 SE2d 310) (1998); *Agony v. State*, 226 Ga. App. 330, 331 (486 SE2d 625) (1997). Further, flight also gave rise to the inference that the defendant sought to conceal the odor of alcohol on his person and intoxication, which even the brief encounter required by law would reveal. The investigating officer, Carrero, testified that hit and run cases occurred to conceal another offense, i.e., no license, no insurance, or driving under the influence. The defendant was observed immediately after the collision at another location driving with an open beer in his hand and in a highly intoxicated condition; the close connection in time makes the evidence relevant to show his condition at the time of the collision. *Steiner v. Melvin*, 143 Ga. App. 97, 98 (1) (237 SE2d 635) (1977); see also *Menendez v. Jewett*, 196 Ga. App. 565, 566-567 (2) (396 SE2d 294) (1990). Such high level of intoxication only a short time after the collision gave rise to the reasonable inference that he was also intoxicated at the time of the collision and, coupled with a past history of drinking and DUI, gave rise to the reasonable inference that he had been drinking and driving when the collision occurred and that he sought to conceal such conduct by flight. See *Moore v. Thompson*, supra at 237. Thus, driving under the influence was an aggravated conduct supporting punitive damages. See id.; *Holt v. Grinnell*, supra. "[E]vidence regarding alcohol consumption is admissible when punitive damages are sought." (Citation omitted.) *Shelter Mut. Ins. Co. v. Bryant*, 220 Ga. App. 526, 528 (1) (469 SE2d 792) (1996).

The jury was authorized to consider that the defendant's perception, attention, reaction time, and motor skills had been affected by alcohol so that the defendant sideswiped plaintiff's vehicle and that defendant left the scene of the collision to avoid detection of his drinking while driving as causing the collision. There was sufficient evidence for the jury to find a causal connection between plaintiff's injuries and defendant's drinking and hit and run conduct. See *Beal v. Braunecker*, 185 Ga. App. 429, 432 (3) (364 SE2d 308) (1987). Shortly after the collision, the defendant was observed in a drunken state that the jury could find had not occurred between the collision and arrival at the condo where Langlois was staying, because there was insufficient time for him to become intoxicated to the degree observed in such period. *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784) (1956); *Menendez v. Jewett*, supra at 566-567.

It was proper for the trial court to deny the motion for directed verdict where there was evidence to support a jury award of punitive damages by clear and convincing evidence. *Ga. Kraft Co. v. Faust*, 200 Ga. App. 686, 688 (2) (409 SE2d 247) (1991).

2. The defendant contends that the trial court erroneously denied his motion in limine to exclude evidence of his history of alcohol consumption and of his driving record, including DUI. We do not agree.

This case presents an unusual combination of issues. Defendant, at the time that he left the scene of the collision without communicating with the plaintiff, was under threat of discharge from the Army if found drinking again, because he had been found drunk on duty one morning after release from jail for a charge of DUI and had been caught drinking in the barracks on another occasion. Thus, he had not only an interest to avoid both civil and criminal liability, but also to protect his military status by concealing his drinking and driving. Therefore, he left the scene of the collision to avoid detection of his drinking and, at trial, denied drinking and committed spoliation of evidence of his drinking and driving at the time of the collision and then denied drinking and intentionally leaving the scene of the collision so that the rebuttable presumption was of no value. See generally as to spoliation of evidence OCGA § 24-4-22; *Jones v. Krystal Co.*, 231 Ga. App. 102, 107 (498 SE2d 565) (1998); *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997). Thus, evidence of his drinking and driving on February 7, 1998, went not only to issues of liability, punitive damages, and credibility, but also to impeachment. Prior and subsequent DUI offenses and a prior habit of drinking went to punitive damages and interest by showing Langlois' reason to conceal his intoxication while driving on February 7, 1998. Thus, the trial judge properly exercised his discretion to admit doubtful and inferior evidence where the defendant intentionally prevented direct evidence through his act of spoliation by leaving the scene of the collision. The admission or exclusion of evidence which has been objected to on relevancy grounds is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985); *McEntyre v. McRae*, 240 Ga. App. 148 (1) (522 SE2d 731) (1999). The trial court properly exercised his discretion in admitting evidence of prior similar conduct under the facts and circumstances of this case. See *Troncalli v. Jones*, 237 Ga. App. 10, 16-17 (4) (514 SE2d 478) (1999).

(a) On February 7, 1998, between 9:45 and 10:00 p.m., Langlois was seen by security guard Willard Bohannon, Jr. at the Summer Wind Condos driving with an open container of beer and with a male companion, Donald Stump. Bohannon talked to the defendant twice

shortly after the defendant arrived and got out of his car. Bohannon found the defendant to be in a very intoxicated state: (1) red faced; (2) speech slurred; (3) unsteady on his feet, needing support, and staggering; (4) an odor of alcohol on his breath; and (5) driving too fast for conditions in the parking lot. The defendant, when told by Bohannon that his car was recently damaged, refused to allow the police to be called. Officer Carrero reported the collision as occurring at approximately 10:00 p.m., which placed the collision immediately before the defendant was seen drunk. On cross-examination, defendant admitted that he went directly from the collision to the Summer Wind Condos, where he was seen by Bohannon; however, Langlois denied drinking on that date. Thus, evidence that he had been drinking on that day was also admissible for impeachment of his denial.

Defendant denied drinking and driving under the influence and that it had any causal connection with the collision on February 7, 1998. Therefore, drinking and driving was an integral issue of liability, along with the issues of driving on the right side of the road, maintaining control, and keeping a proper lookout. Thus, whether or not the defendant was drinking was material to the issue of liability, as well as punitive damages. Because punitive damages were sought, prior similar acts of driving under the influence were relevant and material for punitive damages. *Thompson v. Moore*, supra at 236. In this case, the trial court allowed evidence of the prior drinking to come into evidence to prove the defendant was drinking and driving from evidence of prior similar conduct, because the defendant vigorously denied drinking, had left the scene of the accident to prevent direct evidence on that issue, and had intentionally acted in a fashion to eliminate the possibility of direct proof of his drinking and driving. *Webster v. Boyett*, 269 Ga. 191, 194-196 (496 SE2d 459) (1998).

(b) The issue of driving under the influence was denied by the defendant so that the evidence, even if doubtful, was relevant and material to the issues of liability, punitive damages, credibility, and impeachment. See *Lovejoy v. Tidwell*, supra at 751; *Menendez v. Jewett*, supra at 566-567; *Steiner v. Melvin*, supra at 98. Prior similar acts may be admitted for impeachment purposes as well as for punitive damages. *U. S. Fidelity &c. Co. v. Paul Assoc.*, 230 Ga. App. 243, 245 (1) (496 SE2d 283) (1998); *Chezem v. State*, 199 Ga. App. 869, 871 (3) (406 SE2d 522) (1991); *Beal v. Braunecker*, supra at 431 (2); *Tilley v. Page*, 181 Ga. App. 98, 99-100 (4) (351 SE2d 464) (1986). Admissibility of evidence of doubtful relevancy or competent evidence or evidence of slight probative value is favored, because the weight has been left to the jury to determine. *Ga. Power Co. v. Irvin*, 267 Ga. 760, 766 (3) (482 SE2d 362) (1997); *Williams v. Worsley*, 235 Ga. App. 806, 809-810 (7) (510 SE2d 46) (1998).

(c) Further, defendant had been caught drinking in the barracks by the military and was under threat of discharge for further drinking anywhere. The defendant had a prior history of alcohol abuse, both as a civilian and as a soldier. He would be discharged from the Army if found to have been drinking and driving. Despite his attempts to conceal his driving and drinking, the Army discharged him for such conduct. Thus, he had a substantial interest in denying his drinking and concealing such drinking greater than avoiding the criminal consequences. Evidence tending to show the interest of a party in the outcome has direct relevance and materiality to his credibility as a witness. See OCGA § 24-9-80; *Bd. of Trustees &c. v. Englade*, 256 Ga. 458, 459 (2) (349 SE2d 703) (1986); *Smith v. Davis*, 203 Ga. 175, 182 (3) (45 SE2d 609) (1947). Therefore, such evidence was admissible as a foundation to show that the defendant had a drinking problem and was under threat of dismissal from the Army if caught drinking and driving as it affected his credibility.

(d) Prior similar acts of drunk driving and intoxication were relevant and material as evidence of aggravated conduct for punitive damages, and the trial court had the discretion to admit the prior or subsequent similar acts in the liability phase for punitive damages claim. *Webster v. Boyett*, supra at 194-196; *Thompson v. Moore*, supra at 236. The trial court several times gave cautionary instructions as to what the prior or subsequent alcohol abuse could be used to prove.

3. Defendant contends that the trial court erred in not granting a mistrial following highly prejudicial testimony. We do not agree.

(a) Stump was an eyewitness to the collision and had been drinking with the defendant both before and after the collision on that evening. However, Stump was unavailable to testify because he was absent without leave and subject to arrest. Investigator James Ashdown interviewed Stump, who told him that the defendant had been drinking prior to the collision. Defendant objected to the testimony as hearsay, which was sustained, and moved for a mistrial, which was denied. The trial court erroneously sustained the objection to such testimony as hearsay when it came within the necessity exception; therefore, such testimony was admissible and not the basis for a mistrial. OCGA § 24-3-1 (b); *Luallen v. State*, 266 Ga. 174, 178-179 (5) (465 SE2d 672) (1996); *Wilbourne v. State*, 214 Ga. App. 371, 373 (2) (488 SE2d 37) (1994).

Being AWOL made the witness unavailable. Stump would be subject to criminal prosecution for making a false statement to the police and subject to criminal and military action for aiding and abetting the concealment of the collision. Further, the statement was made by an eyewitness a short time after the collision during the official investigation, was made against his friend, and was made when no motive existed for him to lie, and the statement was never

recanted or changed and was corroborated by other evidence. Such factors would demonstrate sufficient indicia of reliability of the statement as particularized guarantees of trustworthiness. See *Chapel v. State*, 270 Ga. 151, 155-156 (4) (510 SE2d 802) (1998); *Fetty v. State*, 268 Ga. 365, 367-368 (4) (489 SE2d 813) (1997); *Lewis v. Emory Univ.*, 235 Ga. App. 811, 817 (2) (509 SE2d 635) (1998); *McBee v. State*, 228 Ga. App. 16, 24-25 (4) (491 SE2d 97) (1997).

(b) Defendant moved for a mistrial when the investigator indicated that a criminal investigation of the hit and run had been conducted, which the trial court denied. There was nothing prejudicial requiring a mistrial based upon the investigator conducting a criminal investigation.

(c) The defendant again moved for a mistrial when the defendant was asked had he been drinking since age 13, which motion was denied and cautionary instructions given. The cautionary instructions were adequate to cure any harm. Further, such testimony was relevant and material as part of the foundation to show defendant's interest as held in Division 2 (c), which controls.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 19, 2000 — RECONSIDERATION DENIED OCTOBER 3, 2000 — 

*Clark & Clark, Fred S. Clark*, for appellant.
*Hertz & Link, Eric J. Hertz, Mark D. Link, Houston D. Smith III, Rene D. Kemp*, for appellee.