A09A1070. KELLEY v. BLUE LINE CARRIERS, LLC.
A09A1071. AQUILAR et al. v. KELLEY.
(685 SE2d 479)

DOYLE, Judge.

Following a collision in which a tractor-trailer hit her car from behind, Laverne Kelley filed suit against the truck driver, Alvaro Enrique Aquilar; the company which owned the truck, Blue Line Carriers, LLC; Blue Line's insurance company, Aequicap Insurance Company; and John Doe. In Case No. A09A1070, Kelley appeals the trial court's grant of partial summary judgment to Blue Line on her negligent hiring, entrustment, supervision, and retention claim. In Case No. A09A1071, the defendants appeal the trial court's denial of their motion for partial summary judgment on Kelley's property damage claim. For the following reasons, we affirm both orders.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant [or denial] of summary judgment de novo, construing the evidence in favor of the nonmovant."[1]

So viewed, the record shows that on September 20, 2006, Kelley

---

[6] *Walden v. State*, 273 Ga. App. 707, 710-711 (1), n. 1 (616 SE2d 462) (2005).

[7] *Augustin v. State*, 260 Ga. App. 631, 633-634 (2) (580 SE2d 640) (2003).

[1] (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

was driving her car northbound on Highway 44, and Aquilar was driving a tractor-trailer truck owned by Blue Line in the same direction, directly behind Kelley. When Kelley slowed down near an intersection to allow a vehicle in front of her to make a turn, Aquilar struck Kelley's car from behind with the tractor-trailer, damaging the car and injuring Kelley. According to Kelley, there were 40 to 50 feet of skid marks on the road where Aquilar attempted to stop, and the tractor-trailer Aquilar was driving "jack-knife[d]." Neither the police officer investigating the accident nor Blue Line sent Aquilar for alcohol or drug testing after the collision.

In December 2007, Kelley filed a claim for personal injuries and property damage, alleging that Aquilar was negligent in his operation of the truck; Blue Line was negligent in its hiring, entrustment, supervision, and retention of Aquilar as a driver; and Blue Line was negligent in failing to ensure that the vehicle was properly maintained and inspected. Kelley amended her claim in September 2008 to add a punitive damages claim against Blue Line based upon the company's alleged negligent hiring, entrustment, supervision, and retention of Aquilar (the "negligent hiring claim"). In response to Kelley's complaint, Blue Line admitted that, at all times relevant to the claim, Aquilar was its employee or agent and was acting within the scope of his employment, and therefore, any negligence on his part in operating the truck was imputable to Blue Line under the doctrine of respondeat superior.

The defendants moved for partial summary judgment on Kelley's negligent hiring claim[2] and, during a hearing, argued that the claim was duplicative of Kelley's negligence claim, which was based upon Aquilar's negligent operation of the truck. The defendants also argued that Kelley had failed to present any evidence to show that, prior to or during Aquilar's employment with Blue Line, the company knew or should have known that Aquilar was incompetent, had a poor driving record, or had any other problem that negatively affected his ability to safely drive a tractor-trailer. In response, Kelley argued that Blue Line had allowed its employment records on Aquilar to be destroyed after she sent the company a spoliation letter and filed suit and that, as a consequence, she was entitled to a rebuttable presumption that the records would have supported her negligent hiring claim. The trial court granted partial summary judgment to Blue Line on the negligent hiring claim, but did not address the spoliation issue or state the legal or factual basis for its ruling.

---

[2] The defendants also filed a motion for partial summary judgment on Kelley's property damage claim, which the trial court denied. We address the court's denial of that motion in Division 3, infra.

## Case No. A09A1070

1. Kelley contends that the trial court erred in granting Blue Line's motion for partial summary judgment on her negligent hiring claim because Blue Line's spoliation of certain records entitled her to a rebuttable presumption that the records supported her negligent hiring claim and thereby created a jury issue that precluded summary judgment. This enumeration affords Kelley no relief.

Kelley contends that she sent a spoliation letter to Blue Line concerning Aquilar's employment records and other documents in October 2006, one month after the collision at issue. The record shows that Blue Line was unable to produce Aquilar's employment records in response to Kelley's subsequent request for the documents because the company apparently had stored the records in a commercial storage facility, which destroyed the records when Blue Line went out of business in January 2007 and stopped paying rent for its storage unit.

Given this evidence, the record may in fact support a finding that Blue Line spoliated Aquilar's employment records. But citation to such evidence on appeal does not automatically result in a rebuttable presumption that the records support Kelley's negligent hiring claim. Instead, Kelley should have properly raised the issue below and elicited a ruling by the trial court, which would have determined if in fact the evidence was spoliated. If so, the trial court would then have decided whether, in the exercise of its discretion, to impose sanctions against Blue Line, considering multiple factors, including

> (1) whether the party seeking sanctions [will be] prejudiced as a result of the destruction of the evidence; (2) whether the prejudice [can] be cured; (3) the practical importance of the evidence; (4) whether the party who destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence [is] not excluded.[3]

Potential sanctions to remedy the prejudice resulting from the spoliation of evidence include (1) a jury charge that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismissal of the case; or (3)

---

[3] (Punctuation omitted.) *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 180 (2) (539 SE2d 873) (2000).

the exclusion of testimony about the evidence.[4]

Here, however, Kelley did not file a motion for sanctions against Blue Line based upon the spoliation or otherwise elicit a ruling by the trial court on this issue. And the order granting partial summary judgment does not reflect a ruling on the spoliation issue. Absent a ruling by the trial court on the spoliation issue, we will not address it on appeal.[5] Thus, this enumeration presents no basis for reversal.

2. Kelley also contends that the court erred in granting summary judgment to Blue Line on her negligent hiring claim because the claim was separate from and independent of her negligence claim against Aquilar, a claim for which Blue Line admitted responsibility under respondeat superior. This argument is without merit.

> Generally, when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention. The rationale for this is that, since the employer would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer. An exception exists for this general rule, however, where a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee. In such case, it cannot be said that the negligence claims against the employer are merely duplicative of the respondeat superior claim. Under these circumstances, the employer is not entitled to summary judgment on the negligent entrustment, hiring, and retention claims.[6]

In order to support a claim for punitive damages against an employer based on its independent negligence, however, the plaintiff must present "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of

---

[4] See id. See also *Bouve & Mohr, LLC v. Banks*, 274 Ga. App. 758, 764 (2) (618 SE2d 650) (2005) (noting that this list of sanctions is not exhaustive).

[5] See *Travelers Excess &c. v. City of Atlanta*, 297 Ga. App. 326, 329 (677 SE2d 388) (2009) (the plaintiff waived a spoliation issue when it failed to raise the issue or obtain a ruling thereon in the trial court); *Smith v. Liberty Chrysler-Plymouth-Dodge*, 285 Ga. App. 606, 609, n. 3 (647 SE2d 315) (2007) (this Court did not address a spoliation issue because the trial court had not ruled on it).

[6] (Citations and punctuation omitted.) *Durben v. American Materials*, 232 Ga. App. 750, 751 (1) (503 SE2d 618) (1998).

conscious indifference to consequences."[7]

In this case, Kelley failed to present any evidence in support of her punitive damages claim that demonstrated Blue Line's independent negligence in the hiring, entrustment, supervision, or retention of Aquilar. Further, pursuant to our decision in Division 1, supra, Kelley is not entitled to a rebuttable presumption in favor of the negligent hiring claim due to Blue Line's alleged spoliation of evidence. Consequently, she is unable to establish that she has a valid claim for punitive damages against Blue Line based on its independent negligence, so the negligent hiring claim is merely duplicative of her negligence claim against Aquilar, for which Blue Line has admitted responsibility under the doctrine of respondeat superior.[8] Under such circumstances, the trial court did not err in granting partial summary judgment to Blue Line on the negligent hiring claim.

## Case No. A09A1071

3. The defendants contend that the trial court erred in denying their motion for partial summary judgment on Kelley's property damage claim, arguing that no genuine issues of material fact remain as to whether Kelley assigned her interest in the claim to her uninsured motorist insurance carrier and, thus, lacked standing to pursue the claim. We disagree.

The record shows that, in November 2007, Kelley's uninsured motorist insurance carrier, Everest Security Insurance Company, paid Kelley $7,178.76 for the damage to her car resulting from the collision at issue. Kelley signed a document entitled "Agreement to Pursue Claim and For Reimbursement," in which she acknowledged that the payment "shall be considered a loan until the property damage can be recovered from the at fault party." Pursuant to the agreement, Kelley also acknowledged that she and her attorney were pursuing a claim against the at fault party, and she agreed to "diligently pursue recovery of the property damage claim from the at fault party and to reimburse Everest . . . any money recovered on the property damage claim, up to the amount [of] $7,178.76." In addition, Kelley agreed to keep Everest informed of the progress of the claim and not to compromise or settle the claim for less than $7,178.76 without Everest's written approval.

---

[7] OCGA § 51-12-5.1 (b). See *Durben*, 232 Ga. App. at 751 (1) ("[n]egligence, even gross negligence, is insufficient to support such an award") (punctuation omitted).

[8] *Durben*, 232 Ga. App. at 751 (1).

The same day, or at some point within the next three days,[9] Kelley signed a "Subrogation Receipt" acknowledging her receipt of $7,928[10] from Everest as payment under her uninsured motorist insurance policy. The receipt stated that the money was "repayable [to Everest] only in the event and to the extent of any net recovery *the undersigned* [(Kelley)] may make" from any person or entity to compensate for the damage to Kelley's car.[11] In addition, Kelley certified that she owned the property at issue and that she had not settled any claims related to the property damage or released anyone responsible for the loss. She also agreed

> to cooperate fully with [Everest], to promptly present [the property damage] claim and, if necessary, to commence, enter into[,] and prosecute suit against such person or persons, . . . or other parties, through whose negligence or other fault the . . . loss was caused, or who may otherwise be responsible therefore, with all due diligence, in [her] own name.

Later, in the same document, Kelley guaranteed she was the owner of the property "entitled to recover upon said claim for loss or damage thereto," and she appointed the " 'Company' . . . with irrevocable power to collect any such claim or claims, and to begin, prosecute, compromise[,] or withdraw in [its] name, . . . any and all legal proceedings that the said 'Company' may deem necessary to enforce such claim or claims." According to the Subrogation Receipt, "[a]ny legal proceedings are to be under the exclusive direction and control of said 'Company.' "

In analyzing the two documents, we are guided by the following guidelines:

> Initially, the construction of the contract is a question of law for the court. . . . [I]f no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. . . . [I]f, [however,] ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the

---

[9] The documents in the record show that Kelley signed the "Agreement to Pursue Claim and For Reimbursement" on November 16, 2007, and that she signed the "Subrogation Receipt" on November 19, 2007. During the summary judgment hearing, however, her counsel stated that Kelley signed both documents on the same day. Given our ruling below – that the Subrogation Receipt presents a jury question – this issue is moot.

[10] Although the two documents show different amounts that Everest paid to Kelley, the difference is irrelevant to the issues raised on appeal.

[11] (Emphasis supplied.)

court. . . . [A] jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[12]

"Ambiguity in a contract may be defined as duplicity, indistinctness, [or] an uncertainty of meaning or expression."[13]

Here, the Subrogation Receipt — which indicates both that (1) as owner of the vehicle, Kelley is entitled to recover for a claim and agrees to commence and prosecute a lawsuit to recover her damages; and (2) Kelley appoints the Company the irrevocable power to pursue and collect such claims — is ambiguous and presents a jury question on the issue of whether Kelley assigned her property damage claim to Everest.[14] It follows that the trial court did not err in denying the defendants' motion for partial summary judgment on Kelley's property damage claim.

*Judgments affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 23, 2009.

*Reynolds, Horne & Survant, W. Carl Reynolds, Timothy J. Boyd, John C. Fleming*, for appellant.

*Harper, Waldon & Craig, Jonathan M. Adelman, Ashley Giblin, Bullard, Garcia & Wangerin, Kevin A. Wangerin*, for appellees.

---

[12] (Citations and punctuation omitted.) *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993).

[13] (Punctuation and footnote omitted.) *Oglethorpe Power Corp. v. Hartwell Energy Ltd. Partnership*, 244 Ga. App. 859, 863 (537 SE2d 372) (2000).

[14] The defendants rely on *Imperiale v. Pollard*, 187 Ga. App. 427 (370 SE2d 494) (1988). Their reliance is misplaced. The subrogation receipt in *Imperiale* is factually distinguishable from the one in the instant case. See id. at 427; *Kurtz v. Parker Plumbing &c.*, 118 Ga. App. 130, 131 (1) (162 SE2d 755) (1968), which was reversed by the Supreme Court of Georgia in *Parker Plumbing &c. v. Kurtz*, 225 Ga. 31 (165 SE2d 729) (1969).