**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 28, 2014**

# In the Court of Appeals of Georgia

A13A2473. MASTEC NORTH AMERICA, INC. et al. v. WILSON.    JE-123

ELLINGTON, Presiding Judge.

Pursuant to a granted application for interlocutory appeal, MasTec North America, Inc. ("MasTec"), and Gregory Piccione, defendants below, challenge an order of the State Court of Carroll County denying their joint motion for partial summary judgment on Gilda Wilson's claims for punitive damages and for negligent hiring, retention, supervision, and entrustment, in this suit arising from an automobile collision. Because Piccione and MasTec demonstrated that they were entitled to judgment in their favor on these claims, the trial court erred in denying the motion. Consequently, we reverse the court's order.

A grant of summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA §

9-11-56 (c). "Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." (Citations omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). "Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law." (Citations and punctuation omitted.) Id. at 623 (1) (a). We view the evidence of record, as well as all inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party. Id. at 624 (1) (a).

So viewed, the record shows the following. In her complaint, Wilson alleges that, on May 8, 2009, Piccione, while driving a commercial pickup truck owned by MasTec, ran a red light and struck the car that she was driving, causing her serious injuries. Piccione denied that the accident was his fault and contends that Wilson ran the light. The record shows that, on the day of the collision, Piccione was on his way to pick up a work crew. MasTec admits that Piccione was in the course of his employment when the accident occurred. Piccione deposed that he was in no rush to meet the crew, he was alert and well-rested, he was not sick or impaired in any way, he had not consumed any medication or alcohol, and he was focused on the road.

2

Although Piccione was talking to his fiancee on the phone when the collision occurred, he was using a hands-free device.

The collision occurred during morning traffic at the intersection of Highway 166 and South Park Street, a double intersection with two sets of traffic lights on either side of a median. Wilson, who was ejected from her car during the collision, was cited for failing to wear her seatbelt. Given the conflicting accounts of how the accident occurred by the drivers and the eyewitnesses, the police cited both parties for running the red light.

Piccione was not convicted of running the red light. Rather, without the advice of counsel and to avoid legal expenses, he pled guilty to a "reduced" charge of driving "too fast for conditions."[1] There is no evidence in the record establishing how fast Piccione was driving or whether he was exceeding the posted speed limit at the time of the accident.

Wilson sued Piccione for negligence and she sued MasTec under a theory of imputed liability. Wilson also sought punitive damages against both defendants and brought a separate claim for negligent hiring, retention, supervision, training, and

---

[1] OCGA §§ 40-6-180 (requiring reasonable and prudent speeds); 40-6-1 (a misdemeanor).

entrustment against MasTec. In support of her claims against MasTec for punitive damages and negligent hiring, Wilson showed that MasTec had done a background check on Piccione on March 3, 2008, and that it knew that Piccione had been convicted three times for speeding, twice in 2002 and once in 2005, and that he also had been convicted in 2004 for failing to obey a stop sign.

The citations were issued to Piccione while he was driving his personal vehicle. There is no evidence that Piccione had been cited for a traffic violation while driving a commercial vehicle. Piccione was 46 years old at the time of the accident and had been driving for 31 years. He had obtained his "class five" driver's license (the predecessor to a commercial driver's license) around 1985. Around 1998, he obtained a commercial driver's license and he has maintained the license continuously since then.

When Piccione was hired by MasTec in March of 2008, he had never been in an automobile accident before the instant one, and it is undisputed that Piccione had no traffic citations in the three years[2] preceding his employment with MasTec. There is no evidence in the record that MasTec had ever received any complaints

---

[2] Although the record does not indicate that MasTec is subject to the Federal Motor Carrier Safety Regulations, those regulations require that certain employers investigate a prospective employee's driving record for the previous three years. 49 CFR § 391.23 (a).

concerning Piccione's driving. Piccione's driver's license had never been suspended or restricted (except for corrective lenses). Further, in the first six months after being hired by MasTec, Piccione completed a defensive driving class required by the company, and a follow-up review of Piccione's driving record revealed no citations during his first year of employment. The record shows that, on March 11, 2008, Piccione reviewed and signed the MasTec Employee Handbook, which contained driver safety guidelines.

Both Piccione and MasTec argue that the undisputed facts do not support an award of punitive damages against them and that the trial court erred in denying its motion as to these claims. And, since a punitive damages claim is required to support Wilson's claim against MasTec for negligent hiring, retention, supervision, and training, Mastec argues that it is entitled to summary judgment as to this claim, too. We agree.

Absent evidence supporting a valid claim for punitive damages against MasTec, Wilson's claims sounding in negligent entrustment, hiring, and retention fail. As we have explained,

> when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention. The rationale for this is that, since the employer

would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer. *An exception exists for this general rule, however, where a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee.* In such case, it cannot be said that the negligence claims against the employer are merely duplicative of the respondeat superior claim. Under these circumstances, the employer is not entitled to summary judgment on the negligent entrustment, hiring, and retention claims.

(Footnote and punctuation omitted; emphasis supplied.) *Kelley v. Blue Line Carriers,* 300 Ga. App. 577, 580 (2) (685 SE2d 479) (2009). See also *Durben v. American Materials*, 232 Ga. App. 750, 751 (1) (503 SE2d 618) (1998) (accord).

Thus, to support its claims against MasTec based on its alleged independent negligence, it was incumbent upon Wilson to produce evidence sufficient to support an award of punitive damages with respect to that alleged negligence. OCGA § 51-12-5.1 (c) provides that "[p]unitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." Given the punitive nature of such damages, OCGA § 51-12-5.1 (b) provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

6

presumption of conscious indifference to consequences." Negligence, even if gross, will not alone authorize the recovery of punitive damages; there must be circumstances of aggravation and outrage. See *Western Indus. v. Poole*, 280 Ga. App. 378, 380 (1) (634 SE2d 118) (2006); *Durben v. American Materials*, 232 Ga. App. at 751 (1) (accord).

At summary judgment, the question is whether Wilson produced evidence from which a jury could infer that Mastec's actions showed a conscious indifference to the consequences as alleged in the complaint. See *Western Indus. v. Poole*, 280 Ga. App. at 380 (1). Wilson may carry this burden "by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations." (Punctuation and footnote omitted.) Id. See also *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826, 829-830 (3) (435 SE2d 54) (1993) (reversing grant of summary judgment on negligent entrustment and punitive damages where company ignored regulations requiring license record check, where such a check would have unearthed numerous violations, including DUI, and where the evidence otherwise supported an inference that the company had actual knowledge that its driver was incompetent or had a propensity to drive dangerously).

7

Here, it is undisputed that MasTec checked Piccione's driving record before hiring him, reviewed it during his first year of employment, and required Piccione to comply with driver training and safety rules. Although Piccione had some moving violations on his record, he was cited while in his personal vehicle as opposed to while operating a commercial vehicle for an employer, and the most recent violation was more than three years old. Moreover, Piccione had never been in an accident. These facts do not rise to the level of clear and convincing evidence demonstrating that Mastec should have known that Piccione was a habitually reckless or dangerous driver or that MasTec acted with the requisite want of care sufficient to raise a presumption of conscious indifference to the consequences in hiring, retaining, supervising, or entrusting Piccione with a company vehicle. See *Bartja v. Nat. Union Fire Ins. Co.*, 218 Ga. App. 815, 818-819 (4) (463 SE2d 358) (1995) (even assuming the employer had actual knowledge of a driving record showing two moving violations associated with the use of a commercial vehicle, neither of which was sufficient to disqualify him as a driver under federal regulations, the record raised "no [facts] sufficient to preclude summary judgment as to punitive damages").

Additionally, Wilson has not presented evidence from which the jury could infer that the accident at issue was the result of Piccione's willful misconduct, malice,

8

fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. "In cases involving automobile collisions, punitive damages are authorized *when the accident results from* a pattern or policy of dangerous driving, such as excessive speeding or driving while intoxicated, but not when a driver simply violates a rule of the road." (Citations omitted; emphasis supplied.) *Lindsey v. Clinch County Glass, Inc.*, 312 Ga. App. 534, 535 (718 SE2d 806) (2011). See also *Fowler v. Smith*, 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999) (accord); *Carter v. Spells*, 229 Ga. App. 441, 442 (494 SE2d 279) (1997) (accord).

The record before us does not contain clear and convincing evidence that the collision was the result of either willful conduct or a pattern or policy of dangerous driving on Piccione's part. Although the record shows that Piccione pleaded guilty to the misdemeanor traffic violation "too fast for conditions," whether Piccione's rate of travel contributed to the accident is disputed. In fact, there is no evidence in the record that Piccione was violating the posted speed limit. Wilson contends that the proximate cause of the accident was Piccione's having run a red light. Piccione has only one prior citation for failing to obey a stop sign. Further, Piccione has never had an accident as a result of any of his traffic violations, and he has never been cited

9

while driving a commercial vehicle. The record does not support an inference that Piccione caused the instant collision as a result of a "pattern or policy of dangerous driving." See, e.g. *Lindsey v. Clinch County Glass, Inc.*, 312 Ga. App. at 535-536 (no evidence that the driver, who was using his cell-phone at the time of the collision, had a history of distraction-related accidents or other evidence that would show a pattern of dangerous driving or other aggravating circumstances so as to authorize an award of punitive damages); *Brooks v. Gray*, 262 Ga. App. 232, 233-234 (1) (585 SE2d 188) (2003) (crossing the centerline and operating a vehicle without a proper license did not warrant imposition of punitive damages); *Miller v. Crumbley*, 249 Ga. App. 403, 405 (3) (548 SE2d 657) (2001) (no evidence of pattern or policy of dangerous driving where driver failed to keep a proper lookout and pled guilty to following too closely). Compare *Langlois v. Wolford*, 246 Ga. App. 209, 210 (1) (539 SE2d 565) (2000) (punitive damages authorized where the driver left the scene of an accident, was intoxicated, and had a history of prior DUIs and traffic violations).

The facts presented in this case do not support an award of punitive damages against either Piccione or Mastec as a matter of law; consequently, the trial court erred in denying the defendants' joint motion for summary judgment as to these claims. Further, because the punitive damages claim against MasTec fails, Wilson's

10

claim against MasTec for negligence in the hiring, entrustment, supervision, or retention of Piccione is duplicative of the negligence claim against the employee, for which the employer admitted responsibility under the doctrine of respondeat superior. See *Kelley v. Blue Line Carriers, LLC.*, 300 Ga. App. at 580 (2). The court, therefore, also erred in denying summary judgment in favor of MasTec as to that claim.

*Judgment reversed. Phipps, C. J., and Branch, J., concur*.