**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

October 19, 2023

# In the Court of Appeals of Georgia

A23A0730, A23A0731. MCKNIGHT v. LOVE; and vice versa.

DILLARD, Presiding Judge.

John McKnight appeals from the trial court's grant of partial summary judgment in favor of Anthony Love in his action against Love related to an automobile accident (Case Number A23A0730). Specifically, McKnight argues the trial court erred by granting summary judgment as to (1) the issue of punitive damages, and (2) whether Love has been stubbornly litigious within the meaning of OCGA § 13-6-11. Love cross appeals, challenging the trial court's denial of his motion for summary judgment on the question of whether an award against McKnight is permissible under

OCGA § 13-6-11 for bad faith (Case Number A23A0731). For the following reasons, we affirm the trial court's rulings in all respects.[1]

Viewed in the light most favorable to McKnight (*i.e.*, the nonmovant),[2] the record shows that early in the morning of November 13, 2019, both McKnight and Love were traveling in stop-and-go traffic on I-20 in DeKalb County. McKnight was driving his 2011 Chevrolet Silverado truck, and Love followed closely behind him in a 2007 Chevrolet Tahoe. As the two drove along I-20, traffic slowed ahead, and McKnight applied his breaks and stopped his vehicle—but Love forcefully hit McKnight from behind. Just prior to impact, McKnight peered into his rearview mirror and saw that Love would be unable to stop. Although McKnight could not see Love inside of the vehicle (and so he could not tell what Love was doing right before

---

[1] Oral argument was held in this appeal on April 4, 2023, and is archived on this Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case Nos. A23A0730, A23A0731 (April 4, 2023), *available at* https://vimeo.com/816690351. We thank counsel for their thoughtful presentations and helpful briefs.

[2] *See, e.g., Shields v. RDM, LLC*, 355 Ga. App. 409, 412-13 (1) (844 SE2d 297) (2020) ("[W]e review a grant or denial of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party.").

the accident), he believed Love was distracted because he was "coming pretty fast" when other vehicles had already stopped. And there is evidence that in the 20 minutes Love spent driving that morning, he continuously made and received phone calls on his cell phone.

McKnight's truck was damaged, and he sustained injuries to his back and knee, which required a hospital visit and subsequent medical care. Love was cited by police for following too closely and later pleaded guilty to that offense. McKnight eventually brought claims against Love for property damage to the truck and his personal injuries. This included claims for negligence, negligence *per se*, punitive damages, and a request for attorney fees and expenses of litigation under OCGA § 13-6-11.

As litigation ensued, the trial court denied Love's motion to strike evidence of his cell-phone records, which showed that—contrary to his deposition testimony—he used his phone throughout his commute on the morning of the incident. But the court did grant Love's motion to strike various documents that, according to McKnight, showed that Love's vehicle was not equipped with hands-free cell phone technology.

Notably, McKnight does *not* argue the trial court erred in this respect, and so we presume this ruling was correct.[3]

Love moved for partial summary judgment on the issues of negligence *per se*, punitive damages, as well as the OCGA § 13-6-11 claim. And following a hearing on the matter, the trial court denied the motion as to negligence *per se* but granted it as to punitive damages and the OCGA § 13-6-11 request with regard to stubborn litigiousness. The court also denied Love's motion requesting bad-faith damages under OCGA § 13-6-11. These appeals by the parties follow.

1. *Case Number A23A0703.*

a. *Punitive Damages.* First, McKnight argues the trial court erred in granting Love's motion for summary judgment as to his request for punitive damages. We disagree.

Our analysis begins with a brief history of punitive damages in Georgia and why some of our prior cases in this area of Georgia jurisprudence are persuasive rather than binding—which we have previously failed to fully explain in our caselaw.

---

[3] *See Dagne v. Schroeder*, 336 Ga. App. 36, 41 (3) (783 SE2d 426) (2016) ("Matters not enumerated as error will not be considered on appeal and are therefore presumed to be binding and correct." (punctuation omitted)).

From Georgia's Original Code of 1863[4] until 1987, punitive damages were referred to as "vindictive damages":

> In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff; in such cases no measure of damages can be prescribed, except the enlightened conscience of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed. The verdict of a jury in such a case should not be disturbed, unless the court should suspect bias or prejudice from its excess or its inadequacy.[5]

Separately, until 1987, the Georgia Code permitted an award of damages for "aggravating circumstances," providing that "[i]n every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff."[6]

---

[4] *See Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 116 n. 94 (885 SE2d 671) (2023) (Ellington, J., concurring in part) (discussing history of The Georgia Code of 1863).

[5] Ga. Code of 1863, § 2999; *accord* Ga. Code of 1882, § 3067; Ga. Code of 1888, § 3012; Ga. Code of 1895, § 3907; Ga. Code of 1910, § 4504; Ga. Code of 1933, § 105-2003.

[6] Ga. Code of 1863, § 2998; *accord* Ga. Code of 1882, § 3066; Ga. Code of 1888, § 3011; Ga. Code of 1895, § 3906; Ga. Code of 1910, § 4503; Ga. Code of

But in 1987 everything changed. The Tort Reform Act of 1987 resulted in our modern punitive-damages statute,[7] under which "the term 'punitive damages' is synonymous with the terms 'vindictive damages,' 'exemplary damages,' and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant."[8] And importantly, an award under "aggravating circumstances" alone is no longer permissible—that prior standard now only applying to cases in which the cause of action arose *prior* to enactment of the Tort Reform Act of 1987.[9]

---

1933, § 105-2002.

[7] *See Reid v. Morris*, 309 Ga. 230, 233 (845 SE2d 590) (2020) ("The Tort Reform Act of 1987 made several changes to Georgia damages law. One change was the adoption of a new punitive damages statute." (citations omitted)); 1987 Ga. Laws, Vol. 1, pg. 915, 918 § 5.

[8] OCGA § 51-12-5.1 (a).

[9] *See* OCGA § 51-12-5 (a)-(b) ("(a) In a tort action in which there are aggravating circumstances, in either the act or the intention, the jury may give additional damages to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff. (b) This Code section shall apply only to causes of action for torts arising before July 1, 1987."); *Taylor*, 316 Ga. at 112-13 (1) (c) (Ellington, J., dissenting as to Div. III) ("The Tort Reform Act of 1987 replaced the broad descriptive term 'aggravating circumstances, in either the act or the intention' with a list of types of culpable conduct drawn from Georgia's decisional law on punitive damages: 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of

6

Relevant here, the "modern" statute—OCGA § 51-12-5.1 (b)—provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by *clear and convincing evidence* that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."[10] And while cases for punitive damages prior to 1987 did require a showing of "willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences"[11] before permitting punitive (or "vindictive" or

conscious indifference to consequences.' These types of culpable conduct have the common element of being greater than gross negligence." (citations omitted)); *Holland v. Caviness*, 292 Ga. 332, 334 (737 SE2d 669) (2013) ("Also present in the Code prior to the 1987 passage of the Act was then-OCGA § 51-12-5, which permitted the award of 'additional damages to deter the wrongdoer' in tort actions where 'aggravating circumstances' were shown. . . . In the 1987 Act, the General Assembly enacted OCGA § 51-12-5.1, authorizing damages to be awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant in tort actions." (footnotes omitted)); *see also* Ga. L. 1987, p. 915, 917, § 4 (enacting OCGA § 51-12-5).

[10] (Emphasis supplied).

[11] *Chattanooga, R. & C.R. Co. v. Liddell*, 85 Ga. 482, 496 (11 SE 853) (5) (1890); *accord S. Ry. Co. v. O'Bryan*, 119 Ga. 147, 149 (1) (45 SE 1000) (1903); *see, e.g.*, *Parsons v. Ponder*, 161 Ga. App. 723, 724 (2) (288 SE2d 751) (1982) ("There must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences."); *Gen. Refractories Co. v. Rogers*, 240 Ga. 228, 230 (1) (239 SE2d

"exemplary") damages, the 1987 codification added a higher burden of proof—clear

and convincing evidence.[12]

So, while it is not necessarily improper to consider decisions applying the law

as it existed prior to 1987 (as we have done when assessing whether an award is

795) (1977) ("No wilful conduct, malice, fraud or oppression was shown or illustrated in any way. We must then consider whether or not the evidence introduced was sufficient to support a verdict for punitive damages because of entire want of care which would raise the presumption of a conscious indifference to consequences."); *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188, 189 (1) (232 SE2d 62) (1977) ("To authorize the imposition of punitive or exemplary damages, there must be evidence of willful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." (punctuation omitted)); *Felton v. Mercer*, 149 Ga. App. 358, 360 (3) (254 SE2d 398) (1979) ("(T)o authorize the imposition of exemplary damages, or punitive damages as they are commonly called, . . . there must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." (punctuation omitted)).

[12] *See Simpson Consulting, Inc. v. Barclays Bank PLC*, 227 Ga. App. 648, 655 (4) (490 SE2d 184) (1997) ("In passing Ga. L.1987, p. 915, § 5, OCGA § 51-12-5.1(b) and (c), dealing with punitive damages, the General Assembly expressed Georgia's public policy that punitive damages in instances involving aggravating circumstances, i.e., intentional torts or entire want of care, which would raise the presumption of conscious indifference to the consequences, are to be proven by the standard of proof of 'clear and convincing' evidence in order to penalize, punish, or deter such tortious conduct."), *overruled on other grounds by Williams Gen. Corp. v. Stone*, 279 Ga. 428 (614 SE2d 758) (2005); *see also Stone*, 279 Ga. at 428 (noting that the General Assembly "has expressly provided for a greater burden of proof for certain causes of actions through legislative enactment," and listing OCGA § 51-12-5.1 as an example).

8

permissible under OCGA § 51-12-5.1),[13] we must be mindful in doing so of the higher burden of proof now required by the statute. Indeed, when we review the grant or denial of summary judgment in such cases, the question is whether "'the evidence in the record could support a reasonable jury finding either that the plaintiff has shown the required element by clear and convincing evidence or that the plaintiff has not.'"[14] With this important historical and analytical backdrop in mind, we turn to the question

---

[13] *See Carter v. Spells*, 229 Ga. App. 441, 442 (494 SE2d 279) (1997) ("Cases which involve the less stringent standards of proof applicable before the effectiveness of OCGA § 51-12-5.1 also relate to aggravated circumstances of driving."); *Bradford v. Xerox Corp.*, 216 Ga. App. 83, 84 (453 SE2d 98) (1994) (relying upon a pre-1987 case but noting it as such). *But see Coker v. Culter*, 208 Ga. App. 651, 652 (431 SE2d 443) (1993) (holding, when assessing summary judgment, that several cases decided under the Code as it existed before 1987 were "not controlling, as they involve a lesser burden of proof to support punitive damages than is now required by OCGA § 51-12-5.1").

[14] *Johnson v. Omondi*, 294 Ga. 74, 77 (751 SE2d 288) (2013) (punctuation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (II) (B) (106 SCt 2505, 91 LE2d 202) (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' . . . This view is equally applicable to a civil case to which the 'clear and convincing' standard applies." (punctuation omitted)).

9

of whether the request for punitive damages in this case should have survived summary adjudication.[15]

In applying OCGA § 51-12-5.1 to automobile-collision cases, we have routinely held that punitive damages are authorized "when the accident results from a pattern or policy of dangerous driving, such as excessive speeding or driving while intoxicated, but not when a driver simply violates a rule of the road."[16] A "pattern or policy of dangerous driving" entails a history of violations or similar incidents leading up to the collision in question.[17] For example, a history of driving while intoxicated will support

[15] *See* OCGA § 9-11-56 (c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]").

[16] *Lindsey v. Clinch Cnty. Glass, Inc.*, 312 Ga. App. 534, 535 (718 SE2d 806) (2011); *accord Miller v. Crumbley*, 249 Ga. App. 403, 405 (3) (548 SE2d 657) (2001); *see Bridge Transp., LLC*, No. 4:11-CV-78 CDL, 2012 WL 6569274, at *2 (M.D. Ga. Dec. 17, 2012) (holding that the fact that defendant "may have had a pattern of using a cell phone while driving" was "not enough standing alone to establish a policy or pattern of dangerous driving"); *Bennett v. McGriff Transp., Inc.*, 841 FSupp2d 1313, 1316 (N.D. Ga. 2012) (holding that plaintiff was not entitled to seek punitive damages when the plaintiff "failed to come forward with any evidence that [the driver] has displayed a pattern or policy of dangerous driving, or that he has a tendency to drive while fatigued").

[17] *See Mastec N. Am., Inc. v. Wilson*, 325 Ga. App. 863, 867 (755 SE2d 257) (2014) (holding there was no evidence of a "pattern or policy of dangerous driving"

seeking an award of punitive damages for an accident caused by the same conduct.[18]

This is because patterns of behavior can be probative of an "entire want of care and

a conscious indifference to consequences."[19]

---

when, despite defendant's having pleaded guilty to a misdemeanor traffic violation of "too fast for conditions," there was no evidence defendant had a history of traffic violations that caused accidents when he had only one prior citation for running a stop sign), *overruled on other grounds by Quynn v. Hulsey*, 310 Ga. 473 (850 SE2d 725) (2020); *see also Ellis v. Old Ferguson v. Garkusha*, No. 1:18-CV-03440, 2020 WL 4732187, at *4 (III) (A) (N.D. Ga. Aug. 14, 2020) (explaining that "driving history of several DUIs, excessive speed and striking vehicle twice, driving 20 miles with serious mechanical difficulties, and a DUI in conjunction with numerous traffic safety violations" were patterns or policies of dangerous driving); *Waldrop v. Coastline*, No. 3:13-CV-00204-TCB, 2015 WL 11257573, at *2 (1) (N.D. Ga. Mar. 12, 2015) ("Patterns and policies of dangerous driving that may support a claim of punitive damages include driving while intoxicated, regularly and/or excessively speeding, traveling too fast for conditions, a history of related accidents, and a pattern of traffic violations.").

[18] *See Holt v. Grinnell*, 212 Ga. App. 520, 522 (441 SE2d 874) (1994) ("Evidence that [the defendant] had twice previous to the present incident committed the offense of driving under the influence of alcohol is conduct relevant to the trier of fact's determination of what amount of punitive damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case." (punctuation omitted)); *Battle v. Thomas*, 623 FSupp3d 1312, 1319 (II) (A) (1) (N.D. Ga. 2022) ("Courts have found a pattern or policy of dangerous driving sufficient to support punitive damages, for example, where the driver had a history of driving while intoxicated or regularly driving at excessive speeds.").

[19] *See West v. Nodvin*, 196 Ga. App. 825, 828 (3) (d) (397 SE2d 567) (1990) (explaining that "a course or pattern of conduct" can "raise the presumption of conscious indifference to consequences"), *overruled on other grounds by Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999); *see also Ga. Clinic, P.C. v. Stout*, 323 Ga.

11

We first mentioned punitive-damage awards when collisions result from a "pattern or policy of dangerous driving" in the 1997 decision of *Carter v. Spells*.[20] And we reached this inference by citing to the facts from automobile-collision cases involving drivers with histories of drunk driving, or involving circumstances in which there was time to rectify or address a hazard but a failure to do so.[21] In *Carter*, we also first mentioned that punitive damages cannot be recovered when "the driver at fault

---

App. 487, 491-92 (1) (747 SE2d 83) (2013) (holding that jury was presented with sufficient evidence to support an award of punitive damages when a clinic had a pattern of maintaining poor sanitary conditions and failed to improve those conditions when presented with suggestions on how to do so).

[20] 229 Ga. App. 441, 442 (494 SE2d 279) (1997).

[21] *See id.* (providing citations and the following parentheticals to *Boyett v. Webster*, 224 Ga. App. 843 (482 SE2d 377) (1996) (DUI in incident and on previous occasions); *Cheevers v. Clark*, 214 Ga. App. 866 (449 SE2d 528) (1994) (drunk driving in incident at issue as well as subsequent arrests for drunk driving); *Holt*, 212 Ga. App. at 522 (drunken driving); *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826 (435 SE2d 54) (1993) (a "policy" of excessive speed plus defendant struck plaintiff's vehicle twice and kept pushing); *J.B. Hunt Transport v. Bentley*, 207 Ga. App. 250 (427 SE2d 499) (1992) (truck driver drove 20 miles despite serious mechanical problem which caused collision); *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801 (418 SE2d 604) (1992) (drunken driving); *Day v. Burnett*, 199 Ga. App. 494 (405 SE2d 316) (1991) (driving under the influence and in violation of a number of traffic safety laws)).

simply violated a rule of the road," which we also inferred by citing to the facts from several prior cases.[22]

But within and since *Carter*, we have *never* held that showing a pattern or policy of dangerous driving is the *only* path to an award of punitive damages in automobile-collision cases.[23] Indeed, even in cases that have *not* involved a pattern or policy of dangerous driving, we have concluded there was evidence by which a jury could consider the question of punitive damages.[24] Even so, it is still true that "in

---

[22] *See id.* (providing citations and the following parentheticals to *Bradford v. Xerox Corp.*, 216 Ga. App. 83 (453 SE2d 98) (1994) (defendant's speeding did not warrant imposition of punitive damages absent evidence of other aggravating circumstances); *Coker*, 208 Ga. App. at 651 (holding that punitive damages not warranted even though defendant was speeding on wet roads, had consumed some alcohol, and behaved abominably after collision); *Cullen v. Novak*, 201 Ga. App. 459 (411 SE2d 331) (1991) (holding that careless running of red light not sufficient aggravating circumstance)).

[23] *See Head v. De Souse*, 353 Ga. App. 309, 313-14 (1) (836 SE2d 227) (2019) ("In this case, there was no evidence that [the defendant] was speeding, driving while under the influence, or that she had a history of distraction-related accidents, traffic violations, or other evidence that would show a pattern of dangerous driving *or other aggravating circumstances* so as to authorize an award of punitive damages." (emphasis supplied)).

[24] *See Fowler v. Smith*, 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999) (holding there was a question of material fact for the jury to resolve on punitive damages when record showed defendant truck driver stopped behind a disabled car and "may have violated federal safety law by being stopped in the interstate's center lane for approximately 35 minutes before the collision without placing triangular

13

automobile-collision cases, punitive damages are not recoverable where the driver at fault simply violated a rule of the road,"[25] which is why there must be *clear and convincing* evidence showing aggravating circumstances or conscious indifference to the consequences.[26] For example, we have previously concluded there was such

warning devices on the highway," did not turn on his lights after darkness, and kept truck in its location despite another truck managing to drive away); *Keenan v. Hill*, 190 Ga. App. 108, 109 (4) (378 SE2d 344) (1989) (quoting *Battle v. Kilcrease*, 54 Ga. App. 808, 810 (4) (189 SE 573) (1936), for the proposition that "[t]he conduct of a hit and run driver of an automobile in failing to stop and give his name, etc., and render assistance to the person injured, when taken in connection with all the circumstances, may authorize a finding that the conduct of the driver in causing the injury constituted an entire want of care and conscious indifference to consequences, and there were therefore, such 'aggravating circumstances in the act' as would authorize a recovery by the person injured for punitive damages"); *Bales v. Wright*, 59 Ga. App. 191 (200 SE 192) (1938) ( holding, under a lower burden of proof, there was sufficient evidence by which the jury could infer "conscious indifference" so as to permit punitive damages when evidence showed that plaintiff was struck and killed while crossing a street when truck driven at 60 to 65 miles per hour on the wrong side of the road).

[25] *Brooks v. Gray*, 262 Ga. App. 232, 233 (1) (585 SE2d 188) (2003) (punctuation omitted); *accord Doctoroff v. Perez*, 273 Ga. App. 560, 561 (615 SE2d 623) (2005).

[26] *See Archer Forestry, LLC v. Dolatowski*, 331 Ga. App. 676, 678 (1) (771 SE2d 378) (2015) (holding evidence, even construed in plaintiff's favor, did not support a basis for punitive damages when defendant "was traveling approximately 48-51 miles per hour in a 45 miles per hour zone" and talking on the phone when collision occurred); *Petrolane Gas Serv., Inc. v. Eusery*, 193 Ga. App. 860, 861-62 (1) (389 SE2d 355) (1989) (holding evidence was insufficient to raise presumption of "conscious indifference to consequences" when defendant carrying heavy load of

14

evidence when a defendant (1) continued driving a vehicle for 10 to 20 miles with knowledge of a serious mechanical or physical problem before finally veering off a road without braking and thereby striking a plaintiff;[27] (2) struck another person and left the scene of the accident without giving his name or rendering assistance;[28] (3) caused a collision by stopping a truck in the middle of an interstate for half an hour without

---

flammable substances did not slow down for the driver ahead to make a turn when defendant incorrectly assumed the driver ahead had slowed to 10-15 mph to turn into the first driveway, not a second driveway some 800 to 900 feet further away); *see also Day v. Burnett*, 199 Ga. App. 494, 495 (2) (405 SE2d 316) (1991) (applying a lower burden of proof and explaining that evidence showed intoxicated defendant "was negligent in following too closely and traveling too fast for conditions and in failing to maintain a proper lookout for other traffic" before holding that "[e]vidence of such traffic violations, including illegal and excessive vehicle speed, would likewise be sufficient to allow a jury to award punitive damages"), *overruled on other grounds by Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314 (765 SE2d 413) (2014); *Harrison v. S & B Trucking, Inc.*, 179 Ga. App. 291, 292 (1) (346 SE2d 101) (1986) (applying a lower burden of proof and explaining a "jury may find that evidence of illegal and excessive vehicle speeds, in conjunction with the other facts [that showed the night was clear and there was sufficient space to pass on the side without injury] provide[d] proof of an entire want of care and indifference to consequences authorizing punitive damages").

[27] *See J.B. Hunt Transport v. Bentley*, 207 Ga. App. 250, 255 (2) (427 SE2d 499) (1992).

[28] *See Langlois v. Wolford*, 246 Ga. App. 209, 210-212 (1) (539 SE2d 565) (2000) (involving hit and run); *Keenan*, 190 Ga. App. at 109 (4) (same); *Battle*, 54 Ga. App. at 810 (4) (same).

placing warning devices or turning on the vehicle's lights after dark;[29] and (4) struck a pedestrian while driving at an excessive speed on the wrong side of a city street.[30]

And here, we must decide whether following too closely in stop-and-go traffic on I-20 while using a cell phone is clear and convincing evidence of aggravating circumstances or an entire want of care or indifference to consequences so as to permit an award of punitive damages. We conclude it is not.

First, there is no evidence Love had a history of causing accidents while driving and using a cell phone, and so there is no showing of a pattern or policy of dangerous driving. And the trial court struck McKnight's evidence that allegedly demonstrated that Love was not using hands-free technology in violation of Georgia law,[31] the

---

[29] *See Fowler*, 237 Ga. App. at 843 (2).

[30] *See Bales*, 59 Ga. App. at 191 (decided under lower burden of proof); *see also Rutland v. Dean*, 60 Ga. App. 896, 896 (1) (5 SE2d 601) (1939) (applying a lower standard of proof and holding plaintiff had right to recover punitive damages when there was evidence defendant drove 45 mph on a 25 mph city street, passing other cars while approaching an intersection).

[31] *See* OCGA § 40-6-241 (c) (1) (A)-(B) ("While operating a motor vehicle on any highway of this state, no individual shall[ ] . . . [p]hysically hold or support, with any part of his or her body a[ ] . . . [w]ireless telecommunications device, provided that such exclusion shall not prohibit the use of an earpiece, headphone device, or device worn on a wrist to conduct a voice based communication; or . . . [s]tand-alone electronic device[.]").

16

exclusion of which, again, is not challenged on appeal. As a result, and viewed *de novo* in the light most favorable to McKnight (with all reasonable inferences and conclusions construed in his favor),[32] the evidence shows that in stop-and-go traffic on I-20, Love forcefully hit McKnight from behind after following too closely and driving 25 to 35 miles per hour in a 65-mile-per-hour zone. To be sure, Love was making and receiving continuous cell phone calls while he was driving. But this driving behavior does not rise to the level by which a jury could conclude by clear and convincing evidence that Love had an "entire want of care or indifference to consequences" so as to authorize punitive damages.[33] So, while Love's conduct may

---

[32] *See, e.g.*, *Hosp. Auth. of Valdosta/Lowndes Cnty. v. Brinson*, 330 Ga. App. 212, 214 (2) (767 SE2d 811) (2014) ("An appellate court's review of the grant or denial of summary judgment is de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

[33] *See Dolatowski*, 331 Ga. App. at 678 (1) (holding evidence fell short of providing basis for punitive damages award when plaintiff "presented an accident reconstructionist's opinion that, immediately before impact, [defendant] was traveling approximately 48-51 miles per hour in a 45 miles per hour zone" and "when the collision occurred, [defendant] was talking on his cell phone"); *Wilson*, 325 Ga. App. at 866-67 (holding that record did not contain "clear and convincing evidence that the collision was the result of either wilful conduct or a pattern or policy of dangerous driving" despite defendant driver's prior traffic violations, which had never resulted in an accident, and his admitted use of a cell phone while driving); *see also Jones v. Bebee*, 353 Ga. App. 689, 692 (839 SE2d 189) (2020) ("[C]onscious indifference to

17

indeed be negligent, it is not enough to warrant the imposition of punitive damages, and the trial court did not err by granting summary judgment in his favor on this issue.[34]

---

consequences means an intentional disregard of the rights of another, knowingly or wilfully." (punctuation omitted)); *Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 218 Ga. App. 815, 818 (4) (463 SE2d 358) (1995) ("The evidence of [defendant's] driving record does not reveal the requisite culpability required to create a genuine issue of material fact on the propriety of punitive damages against [defendant]. Nor is there evidence that at the time of the collision [defendant] was speeding, traveling too fast for conditions, driving under the influence of alcohol, had an opportunity to avoid the collision, or acted with such a willful and wanton lack of care as to entitle a jury to presume he was consciously indifferent to the consequences of his actions." (citation omitted)).

[34] *See Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 121-22 (4) (365 SE2d 827) (1988) ("Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. There is general agreement that, because it lacks this element, mere negligence is not enough, even though it is so extreme in degree as to be characterized as 'gross'[.]" (punctuation omitted)); *cf. Langlois*, 246 Ga. App. at 211 (1) ("The jury was authorized to consider that the defendant's perception, attention, reaction time, and motor skills had been affected by alcohol so that the defendant sideswiped plaintiff's vehicle and that defendant left the scene of the collision to avoid detection of his drinking while driving as causing the collision. There was sufficient evidence for the jury to find a causal connection between plaintiff's injuries and defendant's drinking and hit and run conduct. . . It was proper for the trial court to deny the motion for directed verdict where there was evidence to support a jury award of punitive damages by clear and convincing evidence.").

b. *Stubborn Litigiousness under OCGA § 13-6-11.* McKnight next challenges the trial court's grant of summary judgment in favor of Love as to the issue of whether Love has been stubbornly litigious so as to permit an award under OCGA § 13-6-11. Once again, we agree with the trial court's ruling.

Although the expenses of litigation are generally not allowed as part of damages, under OCGA § 13-6-11, when "the plaintiff has specially pleaded and has made prayer therefor and [when] the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Further, while the question of whether a bona fide controversy exists is normally one for a jury to decide, we have "repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness or the causing of unnecessary trouble and expense."[35] With the foregoing in mind, we review this enumeration of error *de novo.*[36]

---

[35] *Horton v. Dennis*, 325 Ga. App. 212, 217(750 SE2d 493) (2013) (punctuation omitted); *see David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002) ("[S]tatutory recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action."); *Davis v. Walker*, 288 Ga. App. 820, 825 (3) (655 SE2d 634) (2007) ("[I]n the event of a bona fide

Here, McKnight argues that although there may be a genuine dispute as to the amount of damages, Love has been stubbornly litigious because there is "no longer any question as to whether [Love] had been using his phone in the moments leading up to the collision and at the time of impact." And in support of this assertion, McKnight points to Love's testimony under oath that he did not use his cell phone in the car on the morning in question when his cell-phone records show the opposite. But even if McKnight has evidence showing that, contrary to his deposition testimony, Love made and received calls during his commute on the morning in question, that evidence is not conclusive on the issue of negligence.

McKnight also points to Love's guilty plea to following too closely as evidence of being stubbornly litigious. But even if Love admitted that at least one negligent act resulted in the collision, he disputes that this collision actually *caused* McKnight's personal injuries and the extent of those injuries. There is, then, a bona fide

controversy, recovery of attorney fees under OCGA § 13-6-11 is not authorized, absent a finding of bad faith." (punctuation omitted)).

[36] *See Horton*, 325 Ga. App. at 217 ("Like an order granting a defendant's motion for summary judgment or for a directed verdict, a determination that there is not any evidence to support an award under OCGA § 13-6-11, based on stubborn litigiousness or the causing of unnecessary trouble and expense, is subject to de novo review.").

controversy.[37] Accordingly, the trial court did not err in granting summary judgment as to this particular request for an award under OCGA § 13-6-11.[38]

2. *Case Number A23A0731.*

---

[37] *See Wilson v. Redmond Constr., Inc.*, 359 Ga. App. 814, 818 (2) (860 S.E.2d 118) (2021) (holding there was a bona fide controversy when, despite plaintiff's contention that "both parties' expert witnesses testified consistent with the [plaintiff's] ongoing complaints that the subject driveway was defective," there was "conflicting evidence on the nature of the damage to the driveway, the required repairs, the costs of repairs, and whether [the defendant] or its subcontractor was liable"); *Ga. Ne. R.R. Co. v. Lusk*, 258 Ga. App. 742, 747 (3) 574 SE2d 810) (2002) (holding trial court erred in denying motion for j.n.o.v. on award sought under OCGA § 13-6-11 when defendant presented expert testimony disputing proximate cause of the alleged damage and, thus, defendant "genuinely disputed causation as well as the amount of damages sought" such that there was a bona fide controversy), *reversed on other grounds by Ga. Ne. R. Co. v. Lusk*, 277 Ga. 245, 587 S.E.2d 643 (2003); *Dimambro Northend Assocs. v. Williams*, 169 Ga. App. 219, 225 (6) (312 SE2d 386) (1983) (holding that award under OCGA § 13-6-11 was not authorized when "[t]here was a bona fide controversy as to causation"); *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380, 384 (3) (277 SE2d 753) (1981) ("There was a bona fide controversy as to causation as testified to by the experts on both sides.").

[38] *See C & H Dev., LLC v. Franklin Cnty.*, 294 Ga. App. 792, 796 (2) (670 SE2d 491) (2008) (affirming trial court's grant of summary judgment in favor of defendant on plaintiff's request for an award under OCGA § 13-6-11 when a bona fide controversy existed between the parties); *Brito v. Gomez Law Grp.*, 289 Ga. App. 625, 628-29 (2) (a) (658 SE2d 178) (2008) (holding trial court correctly granted defendant's motion for summary judgment on plaintiff's OCGA § 13-6-11 claim when there was a bona fide controversy as to whether attorney breached a fiduciary duty and the amount of damages).

In Love's cross appeal, he challenges the trial court's denial of his motion for summary judgment as to McKnight's request for an award under OCGA § 13-6-11 on the grounds of bad faith.[39] We disagree the trial court erred in denying the motion for summary judgment on this issue.

Once again, an award is permissible under OCGA § 13-6-11 when "the plaintiff has specially pleaded and has made prayer therefor" and when "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Importantly, the elements which will authorize an award under OCGA § 13-6-11 have "consistently been found to relate to the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself."[40] Put another way, the element of bad faith that will support a claim for expenses of litigation under OCGA § 13-6-11

---

[39] *See* OCGA § 40-6-241 (c) (1) (A)-(B) ("While operating a motor vehicle on any highway of this state, no individual shall[ ] . . . [p]hysically hold or support, with any part of his or her body a[ ] . . . [w]ireless telecommunications device, provided that such exclusion shall not prohibit the use of an earpiece, headphone device, or device worn on a wrist to conduct a voice based communication; or . . . [s]tand-alone electronic device[.]").

[40] *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002); *accord Bd. of Regents of Univ. Sys. of Ga. v. Ambati*, 299 Ga. App. 804, 808 (2) (685 SE2d 719) (2009).

22

"must relate to the acts in the transaction itself *prior to the litigation*, not to the motive with which a party proceeds in the litigation."[41] And indicative of whether a party acts in good or bad faith in a given transaction is "his abiding by or failing to comply with a public law made for the benefit of the opposite party, or enacted for the protection of the latter's legal rights."[42]

Here, the trial court denied Love's motion for summary judgment as to bad faith because it concluded there was a genuine issue of material fact as to whether or not Love was using hands-free technology while driving or whether he violated OCGA § 40-6-241 by failing to do so as McKnight alleged. Love argues that because there is no admissible evidence that he was using his cell phone without the aid of hands-free technology, and because the trial court cited to his post-transaction deposition

---

[41] *Kent*, 274 Ga. at 850 (emphasis supplied); *see Copeland v. Home Grown Music, Inc.*, 358 Ga. App. 743, 751 (2) (a) (856 SE2d 325) (2021) ("[B]ad faith—as contemplated by OCGA § 13-6-11—does not encompass bad faith in defending a claim after a cause of action has already arisen." (punctuation omitted)).

[42] *Nash v. Reed*, 349 Ga. App. 381, 383 (1) (825 SE2d 853) (2019) (punctuation omitted).

testimony that is contradicted by cell-phone records,[43] the court erred in its conclusion.

Although the trial court based its decision on the allegation that Love violated OCGA § 40-6-241, McKnight argued below, as he does again on appeal, that there is evidence to create a genuine issue of material fact on *multiple* potential violations of Georgia traffic laws. And, of course, Love pleaded guilty to the offense of following too closely and does not dispute that he did so. Accordingly, the trial court did not err in its denial of summary judgment on this question.[44]

---

[43] To the extent Love suggests the trial court's reference to this testimony was in any way reliance upon *conduct* that occurred during the course of litigation, the court's order belies that assertion. Read in context, the order shows the court considered this testimony as evidence pertaining to the dispute as to what occurred during the incident in question.

[44] *See Nash*, 349 Ga. App. at 383-84 (1) (holding that the evidence taken together was sufficient to create a jury issue on bad faith when there was evidence by which a jury could conclude defendant broke traffic laws); *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (2) (438 SE2d 406) (1993) ("Evidence that appellants failed to comply with mandatory safety regulations promulgated for the benefit of appellees is some evidence that appellants acted in bad faith in the transaction, within the meaning of OCGA § 13-6-11.").

For all these reasons, as to both A23A0730 and A23A0731, we affirm the trial court's judgments.

*Judgments affirmed. Rickman and Pipkin, JJ., concur.*